PARAMOR THEATER CO. v. TRADE COMMISSION et al.

No. 5995. Decided July 19, 1938. (81 P. 2d 639.)

*Ira A. Huggins,* of Ogden, for plaintiff.

*Joseph Chez,* Atty. Gen., and *E. F. Richards,* of Salt Lake City, for defendants.

FOLLAND, Chief Justice.

The only question for decision in this case is whether the Trade Commission of Utah, created by Chapter 19, Laws of Utah 1937, has jurisdiction over the operation of moving picture theatres. Whether it does, depends on whether the operation of moving picture theaters and exhibition of films is "trade or commerce."

The Commission, considering the operation of motion picture theatres within the scope of its power, issued a "cease and desist" order to plaintiff requiring it to discontinue the

operation of a certain game of chance (Bank Night, or Ten-O-Win) in connection with the operation of its motion picture shows as an unfair method of competition and against the public interest and welfare.

Plaintiff demurred to the complaint before the Trade Commission, but the demurrer was overruled and the cause set for hearing. Thereupon an alternative writ of prohibition was applied for and granted to test the one question of jurisdiction of the Commission to proceed against plaintiff. No other question is raised, and no other question will be considered or decided. We do not pass on the legality or constitutionality of the act creating the Commission and granting it its power, nor on the legality of the game called a "game of chance," against which the Commission issued its cease and desist order.

By the act, Section 14, Chapter 19, Laws of Utah 1937, the Commission has power as follows: .

"(1) Unfair methods of competition in commerce or trade are declared unlawful, and shall be enjoined as hereinafter provided. (2) The commission is empowered and directed to prevent persons, partnerships or corporations, except banks, and common carriers and other public utilities subject to regulation by the public service commission, from using unfair methods of competition in commerce or trade."

The procedure to be followed by the Commission is thereafter outlined.

In the course of the act the words "commerce or trade" are repeated but not defined. We find no definition in any other place in the statutes. Chapter 55 in Title 103 is entitled "Trade and Commerce" but the words are not there defined, and in Section 5 of Chapter 21, Laws of Utah 1937, is this, the "definition of 'commerce' as used in this bill shall be construed to mean intrastate commerce in the state of Utah."

In *Beard* v. *Board of Education of North Summit School District*, 81 Utah 51, 16 P. 2d 900, we had occasion to consider the words "commerce" and "commercial" in connec-

tion with a provision in the statute that school buildings might not be used for "commercial purposes." In the course of our decision we used the term "trade and commerce" although the decision was merely that the exhibition of games, motion pictures, and theatrical performances as extra-curricular activities of the schools were not commercial purposes and hence not barred by the statute. In seeking a definition of the words "commerce" and "commercial" we sought help from dictionaries and decided cases and said "through all these definitions runs the idea that trade and commerce require the transfer of something, either of persons or commodities or intelligence, from one place or person to another." (Page 910.) We quoted from *People* v. *Klaw,* 55 Misc. 72, 106 N. Y. S. 341, 354, wherein Judge Rosalsky said:

"After an exhaustive examination of the subject of what is trade and commerce, I have failed to find any decision, nor has my attention been directed to any decision, classifying theatrical amusements as articles of 'trade' and 'commerce'."

In the Beard Case we referred to or cited with approval cases which held in harmony with our decision, among others: *Metropolitan Opera Co.* v. *Hammerstein,* 162 App. Div. 691, 695, 147 N. Y. S. 532, 535; affirmed without opinion, 221 N. Y. 507, 116 N. E. 1061; *National League* v. *Federal Baseball Club,* 50 App. D. C. 165, 269 F. 681; *American League Baseball Club of Chicago* v. *Chase,* 86 Misc. 441, 149 N. Y. S. 6. To this list we add: *Federal Base Ball Club* v. *National League of Professional Baseball Clubs,* 259 U. S. 200, 42 S. Ct. 465, 66 L. Ed. 898, 26 A. L. R. 357, wherein the business of staging baseball games including intrastate transportation of players was involved. The court said (page 466):

" * * * the transport is a mere incident, not the essential thing. That to which it is incident, the exhibition, although made for money would not be called trade or commerce in the commonly accepted use of those words."

See *Humiston* v. *Universal Film Mfg. Co.,* 189 App. Div. 467, 178 N. Y. S. 752; 63 C. J. 233.

The words have been given a broader interpretation than that now given them by us, but this was done because the context seemed to require it. *Campbell* v. *Motion Picture Machine Operators' Union,* 151 Minn. 220, 186 N. W. 781, 785, 27 A. L. R. 631; *Love* v. *Kozy Theatre Co.,* 193 Ky. 336, 236 S. W. 243, 26 A. L. R. 364.

We do not find anything in the act which requires the words to be given a different or broader meaning than we have indicated. We are of the opinion, therefore, that the legislature did not intend the words to have a broader content than that indicated in the Beard Case.

Where a line of business is to be supervised or controlled in whole or in part by a state agency, the legislative enactment should by clear and decisive words indicate the intent so to do, rather than leave the power to depend on a judicial construction of doubtful words.

The writ of prohibition is made permanent.

HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.