272 P.2d 177

DONAHUE et al.

v.

WARNER BROS. PICTURES DISTRIBUT-
ING CORP. et al.

No. 7965.

Supreme Court of Utah.

June 23, 1954.

Fabian, Clendenin, Moffat & Mabey, Peter W. Billings, Rich & Elton, Salt Lake City, Chester Smith, for appellants.

Dennis McCarthy, Clifford L. Ashton, C. Vernon Langlois, Salt Lake City, for respondents.

CROCKETT, Justice.

This case arose out of a showing in Salt Lake City, Utah, of the movie "Look for the Silver Lining" which was a musical show based on the life story of Marilyn Miller and her rise to fame in vaudeville and musical comedy during the first two decades of this century. Secondarily, the motion picture portrayed the life of Jack Donahue, also a famous singer, dancer and comedian of that era who in fact did co-star with Marilyn Miller in two famous broadway productions, "Sunny" and "Rosalie."

Plaintiffs, the widow and daughters of Jack Donahue, residing in California, sued the defendants, a New York corporation, a Delaware corporation and two residents of Utah, the distributors and exhibitors of the show, for compensatory and exemplary damages and an injunction. Their action is based solely on a Utah statute:

U.C.A.1953, Sec. 76-4-8. "Any person who uses for advertising purposes or for purposes of trade, or upon any postal card, the name, portrait or picture of any person, if such person is living, without first having obtained the written consent of such person, or if a minor, of his parent or guardian, or, if such person is dead, without the written consent of his heirs or personal representatives, is guilty of a misdemeanor." and

258

Sec. 9. "Any living person, or the heirs or personal representatives of any deceased person, whose name, portrait or picture is used within this state for advertising purposes or for purposes of trade, without the written consent first obtained as provided in the next preceding section may maintain an action against such person so using his name, picture or portrait to prevent and restrain the use thereof; and may in the same action recover damages for any injuries sustained by reason of such use, and, if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is declared to be unlawful, the jury or court, if tried without a jury, in its discretion, may award exemplary damages."

New York and Virginia are the only two states having similar statutes protecting the right of privacy, but neither goes as far as ours. "The New York statute does not give the right of recovery to the heirs or representatives of a deceased person, and Virginia, while providing for the recovery by the heirs and representatives, extends its statutory protection only to residents."[1]

It is the plaintiff's theory that the use of a person's name or picture in any manner in which the profit motive is present comes within the meaning of the phrase "for purposes of trade" as used in our statute and is proscribed by it; whereas defendant contends to the contrary that such a broad application of the statute, which would interdict the publication of a person's name or the portrayal of his character in news reports or any media of information which was operated for profit, such as newspapers, radio and television broadcasts, magazine articles, biographical sketches, historical accounts, novels, plays, etc., would so offend against the constitutional guarantees of freedom of speech and of the press that the statute if so interpreted would be unconstitutional. Defendants therefore argue that the statute was only intended to apply to actual advertising or the promotion of sales of a collateral commodity, which interpretation would obviate the difficulties as to its constitutionality. We are confronted with the question as to which of these contentions is correct. In proceeding to our discussion it is expedient to set forth briefly the history of this litigation and its itinerary to this court.

Plaintiffs initiated their action in the District Court of Salt Lake County. On defendants' petition, the case was removed to the Federal District Court because of diversity of citizenship, where their motion for summary judgment was granted on the grounds that the words "for advertising purposes or for purposes of trade" as meant by the Utah Statute did not encompass the exhibition of motion pictures. The plaintiffs appealed to the Circuit Court of Appeals, where after three hearings, in a three

1. 3 Utah L.Rev. 247 (1952).

to two decision, that court held that the use of a name or picture in a movie, based on fiction, "and designed primarily to entertain and amuse an audience * * * willing to pay therefor," would constitute a use "for purposes of trade" within the meaning of our statute, but made the distinction that the incidental use of a name, portrait or picture in the publication of matters essentially educational or informative was not for the purposes of trade.[2] As the record failed to disclose whether the movie "Look for the Silver Lining" met the latter test, the case was remanded to the Federal District Court to determine whether the portrayal of Jack Donahue was "essentially educational or informative" or was primarily to "entertain and amuse an audience * * * willing to pay therefor."

After this remand, upon plaintiff's motion, and apparently without objection from defendants, the case was transferred back to the state court because both parties desired to have a state court construction of the Utah statute. To accomplish that purpose the parties then stipulated that the pleadings filed in the Federal Court should form the basis of the state court proceedings and the defendants, with plaintiff's consent, were allowed to amend their answers setting forth claims for a declaratory judgment with respect to their right to exhibit "Look for the Silver Lining" and similar type motion pictures in Utah portraying deceased public figures either factually or fictionally.

Upon trial in the District Court, the case was submitted to the jury in accordance with the broad view taken by the majority in the Circuit Court of Appeals, that is, that if the publication was "designed primarily to entertain and amuse an audience * * * willing to pay therefor," it would be "for purposes of trade" but if the use made of Jack Donahue's name and career was merely incidental in a film which was essentially educational or informative it would not be within the prohibition of our statute. The court thus submitted the case to the jury on a basis favorable to the plaintiffs. The jury nevertheless rendered a verdict of no cause of action. The trial court then issued its declaratory judgment in which it changed its position, adopting a restrictive meaning of the statute so as to exclude the portrayal of Jack Donahue in "Look for The Silver Lining" from being "for purposes of trade".

Plaintiffs here urge that since the show was produced for the purpose of making a profit and an admission price was charged, it so clearly follows that it was "for purposes of trade" that the trial court should have so ruled as a matter of law and so instructed the jury. As will appear from the conclusion reached in this opinion, the submission of the question to the jury was not error prejudicial to the plaintiffs, be-

2. Donahue v. Warner Bros. Pictures, 10 Cir., 194 F.2d 6, 12. See 3 Utah L.Rev. 247 (1953).

cause we conclude as a matter of law that the publication was not for purposes of trade as denounced by our statute.

The constructions of these sections of our code is a matter of first impression with this court. The intention of the Legislature in using the phrase "for purposes of trade" is not free from uncertainty. The term may be limited to the barter or exchange of goods [3] or it may include all industrial and economic activity.[4] It has also been held that it may [5] or it may not [6] include the showing of motion pictures. In view of the lack of certainty as to the meaning of this language in the context of the statute it is both permissible and desirable for us to survey its historical background in order to throw some light on the legislative intent.

The status of the right of privacy was nebulous at best in the common law. The doctrine was given definite form and brought forcefully to the attention of the legal profession in a law review article [7] written by Warren and Brandeis in 1890. A few years later, in an action brought by a plaintiff whose photograph was used without her consent to advertise a brand of flour, the Court of Appeals of New York held that no right of privacy existed in that state, but suggested that it was a rightful subject of legislation.[8] Pursuant to this recommendation, the New York Legislature enacted a statute which gave a right of action to a living person whose name, portrait or picture was used for advertising purposes or purposes of trade.[9] Its constitutionality was challenged and upheld in Rhodes v. Sperry & Hutchinson & Co.[10] in which the New York Court said: " * * * Such is the character of the right of privacy preserved by legislation protecting persons against the unauthorized use of their names or portraits in the form of advertisement or trade notices. It is a recognition by the lawmaking power of the very general sentiment which prevailed throughout the community *against permitting advertisers to promote the sale of their wares by this method,* regardless of the wishes of the persons thereby affected." (Emphasis added.) This statement is important to our consideration because is was the announced law of New York at the time (1909) of the enactment of our Utah statute which was taken from it.

3. See Paramor Theater Co. v. Trade Commission, 95 Utah 354, 81 P.2d 639; Webster's New Int. Dictionary, p. 2683 (2d Ed.).

4. See Webster's New Int. Dictionary, p. 2683 (2d Ed.).

5. United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L. Ed. 1260.

6. Paramor Theater Co. v. Trade Commission, 95 Utah 354, 81 P.2d 639.

7. "Right of Privacy," 4 Harv.L.Rev. 193.

8. Roberson v. Rochester Folding Box Company, 171 N.Y. 538, 64 N.E. 442, 59 L.R.A. 478.

9. New York Civil Rights Law, McK. Consol.Laws, c. 6, §§ 50, 51.

10. 193 N.Y. 223, 85 N.E. 1097, 1099, 34 L.R.A.,N.S., 1143, affirmed 220 U.S. 502, 31 S.Ct. 490, 55 L.Ed. 561.

It is well settled that "when the legislature of a state has used a statute of another state or country as a guide for the preparation and enactment of a statute, the courts of the adopting state will usually adopt the construction placed on the statute in the jurisdiction of its inception." [11] Thus the enactment of the Utah statute at a time when the language of the Rhodes case above quoted was the declared law of New York seems to indicate that the intent of the Utah Legislature was to give a right of action only when the name was used in advertising or sales promotion schemes. It is here pertinent to observe, however, in view of later New York decisions, that although our Legislature may be assumed to have been aware of the construction of the statute by the courts of the state of its origin at the time of our enactment,[12] that principle does not apply to decisions of the state of origin handed down after the time the legislation was adopted, as it would not have been known to, and could not have been in the contemplation of our Legislature. While such later cases may be helpful and in some instances persuasive, we are of course not obliged to follow the subsequent New York decisions, which have given a broader scope to the operation of their statute than we believe was intended for our enactment, for reasons which will later appear.

An examination of some of the later cases serves to illustrate the difficulties and uncertainties encountered by broadening the scope of the statute to apply to situations other than advertising or the promotion of the sale of goods. This extension was first made in Binns v. Vitagraph Co.,[13] in which it was held that the representation of the plaintiff by actors in a motion picture dramatizing a rescue at sea in which the plaintiff, a wireless operator, had been one of the chief participants was within the prohibition of the statute. This decision was followed in Blumenthal v. Picture Classics, Inc.,[14] which involved a motion picture containing various scenes of New York City, one of which showed plaintiff engaged in her trade of selling bread on one of the streets of the city. As a result of the assaults upon these holdings as an infringement upon freedom of speech and press, subsequent cases have considerably narrowed these rulings. Humiston v. Universal Film Mfg. Co.,[15] held that the use of the plaintiff's name and picture in a motion picture of current events was not contrary to the statute which the court said does not prevent the use of one's name and picture in accurately presenting news. Molony v. Boy Comics Publishers, Inc.,[16] indicates that the use of something other than the actual picture is not prohibited by holding that drawings of the plaintiff in a

---

11. 2 Sutherland, Statutory Construction, Sec. 5209.
12. Ibid.
13. 210 N.Y. 51, 103 N.E. 1108, L.R.A. 1915C, 839.

14. 235 App.Div. 570, 257 N.Y.S. 800.
15. 189 App.Div. 467, 178 N.Y.S. 752.
16. 277 App.Div. 166, 98 N.Y.S.2d 119; see Colyer v. Richard K. Fox Pub. Co., 162 App.Div. 297, 146 N.Y.S. 999.

magazine portraying his heroic behavior following the crash of an airplane into the Empire State Building did not violate the statute. From these decisions it has been said that the test as to when a publication is not prohibited by the statute is whether the use *has any educational or informational aspect,* or is *fictional in nature.*[17] But additional exceptions have also been carved out of this latter rule. Where the name of the plaintiff was used only once in a 400 page novel, recovery was denied.[18] And further, Koussevitzky v. Allen, Towne & Heath, Inc.,[19] held that the portrayal of the character of Dr. Koussevitzky, noted symphony conductor, in a purported biography, containing some untrue or fictional material, was not within the statutory provision, indicating that a publication which is *partly* fictional does not violate the statute. It is also said that the right of privacy, recognized in some states without a statute, is considered to be waived by a person who has become a public figure to the extent that reports concerning him are legitimate news.[20] While the decisions construing the New York statute have not adopted this rule in the same terms with respect to the statutory right of privacy, they do indicate that the statute is less likely to be applicable where a public figure is involved and where there is a direct relationship between the use of the name, portrait or picture and the public interest in the individual whose privacy is invaded.[21]

The various distinctions made with respect to whether the right of privacy exists are difficult to justify under the wording of our statute. There is nothing about its language which would suggest that there is any difference between a motion picture which is educational or informational and one which is fictional. Both are made for the purposes of making a profit and none of the factors upon which the several distinctions rest would suggest the holding that one is "for purposes of trade" while the other is not. The difficulty of placing such distinction on any logical basis is emphasized when we attempt to see sufficient difference between a publication which is partly fictional and one which is wholly fictional to form a rational basis for

---

17. Binns v. Vitagraph Co., 210 N.Y. 51, 103 N.E. 1108, L.R.A.1915C, 839; Sarat Lahiri v. Daily Mirror, 162 Misc. 776, 295 N.Y.S. 382; Koussevitzky v. Allen, Towne & Heath, Inc., 188 Misc. 479, 68 N.Y.S.2d 779, affirmed 272 App.Div. 759, 69 N.Y.S.2d 432; Sidis v. F-R Pub. Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 15; Jeffries v. New York Evening Journal Pub. Co., 67 Misc. 570, 124 N.Y.S. 780. See Donahue v. Warner Bros. Pictures, 10 Cir., 194 F.2d 6; 51 Mich.L. Rev. 762.

18. Damron v. Doubleday, Doran & Co., Inc., 133 Misc. 302, 231 N.Y.S. 444, affirmed 226 App.Div. 796, 234 N.Y.S. 773.

19. 188 Misc. 479, 68 N.Y.S.2d 779, affirmed 272 App.Div. 759, 69 N.Y.S.2d 432.

20. Paramount Pictures v. Leader Press, D.C., 24 F.Supp. 1004; Sidis v. F-R Pub. Corp., supra; see 3 Utah L.Rev. 247, footnote 3.

21. Koussevitzky v. Allen, Towne & Heath, Inc., supra.

declaring one within and the other without the meaning of the statute.

Not only is the basic distinction (between educational and informative as compared with fictional publications) unsatisfactory, but the divers approaches used in determining whether a given publication is one or the other makes for still further uncertainty in this area of the law. Some of the decisions look to the motives of the publishers and hold that it is for purposes of trade if the commercial motivation is controlling; [22] while others ignore the publishers' motives and look to the material itself, being reluctant to apply the statute if any educational or informational value is found.[23]

It goes without saying that in an area such as this, it is desirable to have as much certainty in the law as possible so that anyone, particularly those in the business of purveying public information, can know when the use of a name or picture in a particular manner will result in liability if done without the consent of the subject person or his relatives. A publisher would be required to ask these questions: Is the matter essentially educational or informational or fictional? Is it legitimate news? Is the subject a public or private character? Has he waived his right of privacy, or not? If so, is this particular matter included in the area of waiver, or not? The twilight areas of uncertainty between the alternatives are such that a publisher would have to be constantly negotiating a hazardous course between educational and non-educational, fact and fiction, public and private character, from one quandary to another so that the situation would be both impracticable and intolerable.

We are appreciative that the mere fact that this broad construction of the statute would result in uncertainty is not determinative of the law nor its policy. It does however point up the extreme unlikelihood that the Legislature had any intent that the enactment should have such far reaching and uncertain ramifications, and the desirability of finding the most definite meaning for this law consistent with the purpose for which the Legislature created it.

As a result of the foregoing considerations we reject the idea that this statute was meant to distinguish between educational and informational as contrasted with fictional publications.

This leaves us two alternatives: First to give it a strict and literal application, to prohibit the use of a name, portrait or picture in any manner whatsoever, whether factual or fictional, in connection with any publication where a profit motive is present; or Second, the interpretation contended for by defendants, that the statute was intended only to prohibit the use of

22. Binns v. Vitagraph Co., supra. See Donahue v. Warner Bros. Pictures, supra.

23. Colyer v. Richard K. Fox Pub. Co., supra; Sarat Lahiri v. Daily Mirror, supra; Koussevitzky v. Allen, Towne & Heath, Inc., supra. See 51 Mich.L. Rev. 762.

names, portraits or pictures in connection with advertising or the promotion of the sale of collateral items.

Acceptance of the first alternative, which would include the use of names, pictures, etc., in newspapers, radio, television, newsreels, novels, biographies, plays, movies, etc., would entail the necessity of judicially carving numerous exceptions to skirt the hazards of unconstitutionality because of conflict with the guarantees of freedom of speech and the press. As has been seen, not only is it extremely difficult, if not impossible, to draw out such exceptions with sufficient certainty so that one could safely predict whether a given publication regarding a personality would fall within the statute, but the language of the statute itself provides no basis for any such exceptions. All of which argues that our legislature did not intend any such application of the statute. On the other hand, social considerations, the legislative history of our statute, and its context considered in the light of rules of statutory construction, all point persuasively to the conclusion that the interpretation contended for by the defendant is that which comports with the legislative intent.

■ The public has an important interest to be served in free and uninhibited expression in all channels of public information, of which the movies are an effective medium. The right of privacy, although of great value to individuals, does not contain the vital social implications for the whole of society that exist in the allowance of freedom of expression in motion pictures, showings of newsreels, biographies, historical plays and the like.[24] Where the right of privacy of the individual is pitted against the general weal, we give some consideration to the precept that the best social policy is that which results in the greatest good to the greatest number, unless application of this principle cuts into inviolable rights of the individual.

■ In the face of uncertainty as to legislative meaning, it is helpful and within the prerogative of the court to look to the origin of the statute involved to divine its purpose and intent. As Sutherland says:[25] "In construing ambiguous statutes, courts have referred to messages of the executive to the legislature relative to the subject considered in the statute in litigation in order to ascertain the evils at which the statute was aimed." Near the beginning of the 1909 legislative session Governor Spry, in his message, recommended legislation "to prevent the use of the name of any public· institution of the state, or the official title of any of its officers, *for the purpose of advertising or promoting the sale of any article of merchandise* or stock in any corporation"[26] (emphasis added).

---

24. See Joseph Burstyn, Inc., v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098.

25. 2 Sutherland, Statutory Construction, Sec. 5004.

26. Senate Journal, 1909 Session, p. 42.

And under such circumstances it is likewise permissible to consider the title of the statute, which admittedly is no part of its actual context, to shed light on its meaning.[27] The title of the enactment was: "An Act Prohibiting the Unauthorized Use of the Name or Picture of Any Public Institution in this State, or of any Public Officer or Private Person, for the *Purpose of Advertising.*"[28] (Emphasis added.) It will be noted that both the message requesting the legislation and its title plainly characterize its purpose as being that of controlling the use of names, portraits or pictures for advertising or promoting the sale of merchandise and make no reference directly or by implication to any other class of publication.

Further, if we focus attention on the specific language of our statute, we find that the same conclusion is the most logical one. In prohibiting the use of the name, etc., it employs three separate terms in this sequence, *"for advertising purposes"*, or *"for purposes of trade"* or *"upon any postal card, * * *."* The phrase "for advertising purposes" is specific and characterizes the enactment. The phrase which follows, "for purposes of trade," could be taken in a very general sense. It is a well-recognized rule of statutory construction where general terms are used following specific ones, the general must be understood in the light of and as characterized by the specific,[29] and are limited to things of like kind.[30] A natural and sensible interpretation of the statute under this rule leads to the conclusion that the Legislature was thinking of the use of names, etc., for advertising purposes, or for the sale of some collateral commodity and they had no thought of extending it to other classes of publication hereinbefore referred to. Had such been their intent, most of the numerous media of purveying information existed at that time and it would have been simple enough for them to have expressly included them within the prohibition either in general or specific terms. But of all of such media they saw fit only to proscribe one particular item, i. e., postal cards. If the word, "purposes of trade" had been considered by the Legislature to encompass all forms of business publication, it would hardly have been necessary to expressly mention postal cards since the broad interpretation of "purposes of trade" contended for by plaintiff would also have included postal cards. The express inclusion of postal card further serves to characterize the nature of the uses interdicted as that of advertising or directly commercializing a name or picture.

---

27. 2 Sutherland, Statutory Construction, Sec. 4802.

28. Laws of Utah, 1909, Ch. 61.

29. See 2 Sutherland, Statutory Construction, Secs. 4909, 4911.

30. Lehi City v. Meiling, 87 Utah 237, 48 P.2d 530, quoting 19 C.J. 1255. See also 28 C.J.S., Ejusdem, page 1049.

266

Finally, as has been observed, if the statute were interpreted and applied as contended for by the plaintiff, to prohibit any use of a name or picture in the many classes of publication hereinbefore referred to, serious doubt would exist as to its constitutionality because of its conflict with the right of other individuals and the public in freedom of speech and press, whereas by construing it to proscribe only the use for advertising, or exploitation of the name or picture, or for the promotion of the sale of some collateral commodity, obviates any question as to its constitutionality. Where there is ambiguity or uncertainty with respect to the interpretation or application of the statute, and two alternatives exist, one by which the statute would be either unconstitutional, or serious doubt would exist as to its constitutionality, as compared with an interpretation whereunder the statute would be clearly constitutional, the latter will be given effect.[31]

We therefore are in accord with the ruling of the trial court in its declaratory judgment that the semi-fictional portrayal of Jack Donahue in "Look for the Silver Lining" was not for "purposes of trade" within the meaning of the prohibition contained in sections 76–4–8 and 9 of our statutes set out at the beginning of this opinion. This conclusion renders it unnecessary to consider other questions raised by this appeal.

31.  11 Am.Jur. pp. 729, 730.

Judgment affirmed.   Costs to respondents.

McDONOUGH, C. J., and HENRIOD and WADE, JJ., concur.

WORTHEN, J., does not participate herein.