**ESQUIRE, Inc., Plaintiff, Appellant,**

v.

**ESQUIRE SLIPPER MANUFACTURING CO., Inc., Defendant, Appellee.**

**ESQUIRE SLIPPER MANUFACTURING CO., Inc., Defendant, Appellant,**

v.

**ESQUIRE, Inc., Plaintiff, Appellee.**

Nos. 5153, 5154.

United States Court of Appeals
First Circuit.

Heard Dec. 4, 1956.

Decided April 24, 1957.

Harold R. Medina, Jr., New York City, with whom James D. St. Clair and Hale & Dorr, Boston, Mass., were on brief, for Esquire, Inc.

Cedric W. Porter, Boston, Mass., with whom Robert B. Russell and Porter, Chittick & Russell, Boston, Mass., were on brief, for Esquire Slipper Mfg. Co., Inc.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

These are cross appeals from a judgment entered by the United States District Court for the District of Massachusetts in a suit for trade-mark infringement and unfair competition. The plain-

tiff, Esquire, Inc. (since these are cross appeals we shall for convenience refer herein to the parties as plaintiff and defendant as they appeared in the court below), is a Delaware corporation which since 1933 has published a monthly magazine called "Esquire." Since 1934 it has enjoyed federal registration (No. 313,768) of the name "Esquire" printed in distinctive disjointed script as the trade-mark for its magazine. The defendant, Esquire Slipper Manufacturing Co., Inc., is a Massachusetts corporation organized in 1949 which as its name implies is engaged in the business of manufacturing men's slippers. The relief sought by the plaintiff in this suit is an injunction restraining the defendant from making any use whatever of the word "Esquire," in any form of type or print, either in its corporate name, or on its product, or in its advertising, and in addition counsel fees in lieu of damages.

In view of the uncontradicted testimony at the trial of the defendant's treasurer and principal managerial officer that the defendant used the word Esquire on only about 10% of its slippers, the balance being sold to retailers who marketed them under their own brand names, and that the word was of no value to the defendant on its goods, and his agreement on behalf of the defendant not to use the word on its merchandise, labels, containers or advertising, the District Court found no occasion to pass upon the defendant's right to use the word otherwise than in its corporate name. Then,

concluding that the plaintiff had no valid cause to complain of the defendant's use of the word Esquire in block letters (which its treasurer agreed to do) as part of its corporate name, it entered judgment dismissing the plaintiff's complaint. The judgment from which both parties have appealed is quoted in full in the margin.[1]

The plaintiff, Esquire, Inc., contends that it is entitled to all the relief asked for in its complaint; the defendant, Esquire Slipper Manufacturing Co., Inc., contends that the plaintiff is entitled to no relief at all and that it, instead of the plaintiff, is entitled to an award of counsel fees and costs both in this court and in the court below.

This is obviously a dilution case, for clearly the parties are not directly competing with one another in the sale of similar goods. Compare Pro-phylactic Brush Co. v. Jordan Marsh Co., 1 Cir., 1948, 165 F.2d 549. But the fact that the parties are not trading in goods of the same descriptive properties, i. e. that one is selling a magazine and the other men's slippers, does not prevent the plaintiff from asserting a cause of action for trade-mark infringement under the Lanham Act, for the test of infringement under that act is not similarity of goods or services but whether the marks used are so similar as to be "likely to cause confusion * * * or to deceive purchasers as to the source of origin of [the respective] goods or services." Lanham Act, 15 U.S.C.A. § 1114.

1. This cause having been tried to the court and an opinion handed down March 16, 1956, which opinion, following a further hearing, was modified on June 27, 1956, and the defendant having agreed to discontinue the use of the name Esquire as a trademark or name on merchandise manufactured or sold by it, and on its labels, containers or advertising material, or elsewhere, except as part of its corporate name, and to discontinue the script form of the name Esquire in its corporate name, said agreement not to be construed as an admission in case of an appeal herein,

It is hereby ordered, adjudged and decreed:

1. That the defendant has the right to continue using its corporate name Esquire Slipper Manufacturing Co., Inc., provided that the word Esquire shall be in identical type with, and no more conspicuous than, the rest of the corporate name, and that if merchandise, or retail labels, containers, advertising or display, carry defendant's name said material shall bear at least equally prominently some trade or semi-descriptive name which has no connection with Esquire.

2. That the defendant shall have until October 1, 1956, to dispose of its merchandise, containers, etc. now on hand which do not conform with this judgment and its said agreement.

3. That the complaint be dismissed, without costs.

The plaintiff asserts that there is great likelihood that consumers will confuse the source of the defendant's slippers with the source of its magazine for two reasons: first because the mark "Esquire" has acquired a "secondary meaning" indicating its magazine exclusively, and second because of its practice adopted years ago of giving its so called "commercial blessing" to its advertisers.

The plaintiff's magazine currently sells for 60 cents a copy on the news stands and has a monthly circulation of approximately 800,000 copies. Being comparatively high in price, it is addressed primarily to a relatively well-to-do audience. It purports to be concerned with all "masculine interests," indeed on its cover under its name it carries the slogan "The magazine for men." Each issue contains a substantial amount of advertising from which the plaintiff derives a considerable income, and in advertising lineage, men's wear, liquor and travel rank in the order named. In editorial content men's fashions appears to maintain roughly the same relation to liquor and travel, but to stand far behind fiction, non-fiction, cartoons and other pictorial material much of which, no doubt to increase circulation and hence advertising revenue, is a bit racy if not sometimes risque.

The assertion is that Esquire magazine is the dominant voice in men's fashions, indeed it is "almost the sole arbiter of what is correctly fashionable" for men, and that over the years it has attained pre-eminence in that field.

Furthermore, during recent years "Esquire," like "Life" and some other magazines, has followed the practice of promoting the products advertised in its columns by so-called "tie-in advertising." That is to say, it gives its "commercial blessing" to its advertisers' products by providing the retailers who carry them with placards or posters indicating that the particular merchandise has been advertised in "Esquire." In addition it has also provided retailers with comparable promotional material indicating that designated merchandise on the retailers' shelves conforms to fashion trends or principles described and discussed in the magazine, as being for instance "authentic" "Mr. T." or "Bold Look" fashions.

These in brief are the facts upon which the plaintiff asserts its right to the injunction, costs and counsel fees for which it asks.

The plaintiff seems almost to contend that the word "Esquire," except, usually abbreviated, as a form of address or title, as customarily used in addressing members of the bar, has as a practical matter disappeared from the English language except as the name of its magazine. The District Court did not adopt this view and neither do we.

The word "Esquire" may not be capable of precise definition. See Webster's New International Dictionary, Second Edition. But the fact remains that it is not a coined word but one firmly established in the English vocabulary that has by no means become obsolete. And the word carries with it clear and strong implications of youthful gentility in an aura of wealth. Thus it has definite built-in attraction as a name for a magazine devoted primarily to men's fashions. By the same token it also has attraction as a name for other products of interest to men, such as men's furnishings and clothing including slippers. In short, the plaintiff picked an already diluted name as the mark for its "magazine for men." This does not mean that the plaintiff is entitled to no protection for its name. But it does mean that the scope of the protection to which it is entitled is not as broad as that which might be accorded to a strong, coined name, as "Kodak," for instance. We do not think a trader can pluck a word with favorable connotations for his goods or services out of the general vocabulary and appropriate it to his exclusive use no matter how much effort and money he may expend in the attempt. Nevertheless the fact remains, as the court below found, that the magazine "is regarded as a prominent voice on the subject of men's fashions," and the name of the magazine, "so far as it belongs to the

plaintiff, has valuable good will" attached to it.

█ Nor does the plaintiff's practice of giving its "commercial blessing" to its advertisers entitle the plaintiff to appropriate the word to its exclusive use. It may be that some consumer-buyers, seeing the name "Esquire" in script on the defendant's slippers or on its boxes, labels or advertising, would infer some connection between the publisher of the magazine and the manufacturer of the slippers even without seeing a "tie-in" poster or placard. But it is hardly reasonable to suppose that consumers, if they gave any thought to the matter at all, would assume that the publisher of a magazine, even a "magazine for men" was also engaged in the business of manufacturing men's slippers. The most that ordinary consumers would assume would be that the products of the slipper manufacturer had the approval in some way of the publisher of the magazine—that the magazine publisher had given the slipper manufacturer a pat on the back. This is enough to warrant giving the plaintiff some protection for its name but not enough to warrant giving it complete protection. The question is the *quantum* of the protection to be accorded the plaintiff and this is a matter primarily for the District Court. It seems to us, since the name itself is relatively weak as applied to the plaintiff's magazine, that the scope of the protection indicated in the judgment appealed from, which we shall consider presently, is quite adequate to protect the plaintiff's rights under the Lanham Act.

█ Nor do we believe that any different conclusion is required with respect to the cause of action for unfair competition in which we apply Massachusetts law.[2] Food Fair Stores v. Food Fair, Inc., 1 Cir., 1949, 177 F.2d 177, 184. See also Maternally Yours v. Your Ma-

ternity Shop, 2 Cir., 1956, 234 F.2d 538, 540–541.

The applicable Massachusetts statute, Mass.G.L.(Ter.Ed.) c. 110 § 7A, inserted by Mass.St.1947 c. 307, provides:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."

This statute might be read as requiring as a matter of law that in Massachusetts courts of equity in trade-mark infringement and unfair competition cases give the plaintiff injunctive relief no matter how weak the plaintiff's mark may be, against a defendant whose actions create any likelihood of dilution of whatever distinctive quality the plaintiff's mark may have. But so to read the statute would be to fly in the face of the general principle that courts are not to presume a legislative intention to rigidify the traditionally flexible equity practice of granting or withholding injunctive relief in the exercise of sound judicial discretion. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 330, 64 S.Ct. 587, 88 L.Ed. 754. Thus, in the absence of clear mandatory words, we shall continue, until the Supreme Judicial Court of Massachusetts gives clear indication to the contrary, to construe the statute as only permissive, as we did in the Food Fair case. That is to say, we think the statute was meant to accomplish no more than to permit injunctive relief in Massachusetts in suits for trade-mark infringement or unfair competition grounded on dilution of a plaintiff's mark as well as in such suits grounded on direct infringement.

█ For the reasons already stated we reject the plaintiff's contention that

---

2. Federal jurisdiction over this cause of action based on diversity of citizenship and amount in controversy is clear, so we need not consider the possibility of pend-

ent federal jurisdiction on the Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, principle.

it is legally entitled to all the injunctive relief it asked for in its complaint. The scope of the relief of that nature to which it is entitled under either the Lanham Act or the Massachusetts statute is primarily a matter for the District Court with which we would only interfere were we convinced that the trial court's conclusion resulted from an error of law or an abuse of discretion. We find neither here. The conclusion reached seems well adapted to protect the respective rights of the parties, although the judgment embodying the conclusion is not, as we shall point out after considering the claims of both parties for counsel fees and costs.

The plaintiff's claim for costs and counsel fees rests upon the assertion that the defendant's dilution of the mark was wilful, deliberate and premeditated. The court below did not so find and we agree. Although undoubtedly the defendant knew of the plaintiff's use of the word "Esquire" as the name for its magazine when it adopted the same name for use in its corporate title and in connection with its product, it is not a foregone conclusion that it did so with the bald intent of confusing the consuming public by identifying its product with the plaintiff. The name being weak, both for the plaintiff's product and its own, the defendant may well have thought it was within its legal rights in using the name as it did in its title and on its slippers. It is not as though the defendant had taken a unique coined word, invented, developed and used by some other trader, as its identifying symbol.

The defendant's claim for counsel fees, indeed its claim that the plaintiff is not entitled to any relief at all, rests upon the assertion that the plaintiff's hands are unclean because of the lengths to which it has gone in threatening with suit and in suing others for using not only the name "Esquire" but even the names "Squire" and "Squires."

It is true, as the District Court found [139 F.Supp. 231], that the plaintiff has gone to great lengths in " 'policing' the name Esquire, so as to discourage its use by all and sundry," even going to the extent of objecting to the use of the word "Squires'" in the name of a home for the aged and convalescent. This policing action of the plaintiff, the court said, "is not limited to fields in which there could be thought to be any trademark violation, unfair competition, or 'free-riding,' but is in the bold, and I hold legally untenable, basis that everyone who uses commercially the word Esquire, or even any of its derivatives, such as Squire or Squires, is unlawfully appropriating what is plaintiff's and plaintiff's alone." And the court further found "if material, that plaintiff is engaged in a wholesale attempt to prevent the use of the name Esquire by persons against whom it has no possible rights." But the court below did not go beyond voicing sharp criticism of the plaintiff's conduct. It did not base its dismissal of the plaintiff's complaint on what might, perhaps, be a dubious finding of its unclean hands.

The plaintiff certainly went to the brink in policing its mark. But it was on the horns of a dilemma. If it sat back and did nothing, it might see its mark so cheapened by general use that it lost the last vestige of value to the plaintiff or to anyone else. On the other hand, if it embarked on too vigorous a campaign to protect the value of its mark by threatening to sue, and in numerous cases bringing suit against those who ignored its threats, it ran the risk of being met with the defense of "unclean hands." Its zeal for its mark may not have been justified by the mark's intrinsic strength, but its zeal may well have been born of overenthusiasm for its relatively weak mark rather than an attempt to browbeat and coerce. We are not disposed to go beyond the comments of the District Court and conclude on the evidence that the plaintiff was guilty of unclean hands as a matter of law. Therefore we shall not disturb the discretionary finding of the District Court that neither party is entitled to counsel fees or costs. Nor shall we award counsel fees or costs in this court to either party.

The District Court's judgment remains for consideration. That court obviously felt that the plaintiff was entitled to some degree of protection for its mark. So do we, and we think the scope of protection indicated in that court's judgment is adequate and appropriate. But nevertheless the court below entered judgment dismissing the plaintiff's complaint. This leaves the plaintiff without recourse to summary relief by petition for contempt in the event the defendant at some future time fails to abide by agreements and concessions made on its behalf by its treasurer at the trial. Should that event occur, the plaintiff's only recourse would be to bring another suit against the defendant in which it would be forced to relitigate the issues with respect to the Esquire mark on slippers and the use of script in printing the corporate name. To accord the plaintiff the degree of protection to which we and the District Court believed it entitled, there should be entered a decree of injunction limited in accordance with the views expressed by the court below. See Food Fair Stores, Inc. v. Food Fair, Inc., 1 Cir., 1949, 177 F.2d 177, 185, 186.

A judgment will be entered vacating the judgment of the District Court and remanding the case to that Court for the entry of a decree of injunction consistent with the views expressed in this opinion. No costs in this Court to either party.