**HMH PUBLISHING COMPANY, Inc., a corporation, and Playboy Clubs International, Inc., a corporation, Plaintiffs,**

v.

**Othal L. TURNER and On-The-Town, Inc., a Georgia corporation, doing business as Atlanta's Playboy Club, Defendants.**

**Civ. A. No. 8429.**

United States District Court
N. D. Georgia,
Atlanta Division.

March 8, 1966.

815

Smith, Ringel, Martin & Lowe, Atlanta, Ga., Dressler, Goldsmith, Clement & Gordon, Devoe, Shadur, Mikva & Plotkin, Chicago, Ill., for plaintiffs.

Hatcher, Meyerson, Oxford & Irvin, Atlanta, Ga., for defendants.

LEWIS R. MORGAN, Chief Judge.

Plaintiffs, both non-resident corporations, in the above-styled case filed a complaint in this Court charging that the defendants, a Georgia resident and a Georgia corporation, have wilfully adopted the trade-marks and service-marks of the plaintiff HMH Publishing Company, Inc. (herein referred to as HMH), and have thereby wilfully infringed on the trade-marks and service-marks of the plaintiff HMH with intention and for the purpose of passing off their business as a business licensed, sponsored, approved, recommended, or somehow connected with the plaintiff HMH or its nationally known magazine, *Playboy*, or with the Key Clubs licensed by the plaintiff HMH. Plaintiffs contend that the defendants have engaged and are engaging in unfair trade practices and unfair competition against the plaintiffs have improperly realized profits, and will continue to cause plaintiffs irreparable harm and to realize profits improperly unless enjoined by this Court. The plaintiffs therefore have asked this Court to issue an injunction that the defendants and each of them be enjoined from using directly or indirectly the trade-mark and service-mark "Atlanta's Playboy Club" or any confusingly similar mark in connection with the operation of the night club or restaurant or any other business.

The Court, on June 19, 1963, issued an order directing the defendants to show cause on July 9, 1963, why the prayers of the plaintiffs for a preliminary injunction should not be granted. A preliminary injunction was granted by this Court to plaintiffs on September 12, 1963. Thereafter, on December 14, 1964, defendants filed a cross-bill for injunction which was denied on January 19, 1965. The defendants, on March 5, 1965, filed in the Superior Court of Fulton County, Georgia, a petition seeking the same relief, and this Court enjoined the State proceedings as interfering with this Court's jurisdiction on March 25, 1965. On October 15, 1965, plaintiffs filed an amended and supplemental complaint which sought substantially the same relief as alleged in their original complaint.

The matter came on for a hearing before this Court sitting without a jury on October 20, 1965.

This is a complaint under the Lanham Trade-mark Act, 15 U.S.C.A. § 1051 et seq., for an order enjoining infringement on a valid trade-mark. HMH Corporation initially obtained a trade-mark on the word "Playboy" for a magazine. Later, an application for a trade-mark for a Key Club on a night club operation utilizing the name "Playboy Club" was applied for, predicated upon the success of the magazine *"Playboy"*, and identification of the night club with the magazine. Additional operations were started in other cities and were associated in the public mind with the original club and its association with *Playboy* magazine. These clubs received great publicity and were known throughout the country as a particular type and operation of night clubs. Persons in every state in the Union hold keys to these clubs and attend them on the assumption that they are the clubs operated by the plaintiff.

After a great deal of publicity had been given to the plaintiffs' night club, the defendant opened a night club in Atlanta called "Atlanta's Playboy Club".

According to the plaintiff, a number of persons did in fact think that this was a part of the national Playboy organization, and, on that basis, attended the defendants' club. The evidence indicated that many people wrote rather indignant letters to the plaintiffs because it was not one of their clubs; that they had thought it was, and if it was, it was not up to the standard normally used by the plaintiffs in their clubs. The plaintiffs point out in their brief that it may be well to note that the use of the possessive in the name of such an organization indicates that it is part of a group of such clubs.

██ The basic protection of a trade-mark is the right to use a name identified with a particular operation, program or product. Baker v. Simmons Co., 1 Cir., 307 F.2d 458. The more general the public acceptance of a particular name, whether it be generic, descriptive or secondary, as the identity of a product, the stronger the trade-mark protection; and the more obvious and subtle the attempt to utilize the value of that trade-mark by unfair competition, the more urgent the need for injunctive relief. Whitley Grocery Company v. McCaw Manufacturing Company, 105 Ga. 839, 32 S.E. 113.

██ It seems to this Court that the evidence is inescapable in establishing that to the general public the words "Playboy" and "Playboy Club" have a definite positive meaning, both as to the type of operation and the source of operational control. The fact that one deals with a publication and the other with a night club operation is immaterial, since the two are intermeshed in the public mind. Esquire, Inc. v. Esquire Slipper Manufacturing Company, 1 Cir., 243 F. 2d 540; Ambassador East, Inc. v. Orsatti, Inc., 3 Cir., 257 F.2d 79.

██ The Court feels that this is a proper case for injunctive relief. The plaintiffs have expended large sums of money to establish and maintain in the public eye certain standards of decor and conduct in their clubs. If the defendants do not conduct their club with the same propriety or demeanor, this publicity would obviously be injurious to the plaintiffs' reputation and the good will built up over many years. Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972. As the plaintiffs have a club in operation in Atlanta, the Court feels that they are entitled to protection from infringement upon their trademark.

## FINDINGS OF FACT

### 1.

Plaintiffs are citizens of the State of Illinois and the State of Delaware. The individual defendant is a citizen of the State of Georgia, and the corporate defendant is incorporated under the laws of the State of Georgia and doing business in the City of Atlanta, Georgia.

### 2.

The plaintiff HMH, at all times herein mentioned, was and still is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois with its principal office and place of business in the City of Chicago, Illinois.

### 3.

The plaintiff Playboy Clubs International, Inc. (herein referred to as Playboy Clubs) is a corporation organized and existing under and by virtue of the laws of the State of Delaware.

### 4.

For many years, plaintiff HMH has published, sold and distributed throughout the United States a monthly magazine under the trade-mark *Playboy,* distributed through the usual channels of the trade. *Playboy* magazine is sold and distributed throughout the United States (including the City of Atlanta and the State of Georgia) and enjoys a large circulation as of the date of this trial of 3,000,000 copies per month and an excellent reputation, not only for its general contents but as an advertising medium. Said *Playboy* magazine, at all times herein referred to, has been written, prepared, arranged and composed by plaintiff HMH or for it by its officers, agents and employees, and plaintiff HMH has

been and is the author and proprietor of each of the issues thereof within the meaning of Section 62 of the Copyright Act of 1909, as amended (17 U.S.C. Sec. 62).

5.

*Playboy* magazine has a large and valuable goodwill, rapidly growing circulation and advertising volume, identified by the term "Playboy" and plaintiff HMH derives substantial profits from the publication and sale thereof. The total gross income of the plaintiff HMH for the year 1964 exceeded $20,900,000.00. Plaintiff HMH has extensively advertised its trade-mark "Playboy" throughout the United States, including the City of Atlanta and the State of Georgia, in magazines circulating nationally and in other media.

6.

For a number of years, plaintiff HMH has continuously sold in interstate and intrastate commerce and advertised under its trade-mark and service-mark Playboy services and consumer items, such as travel tours, phonograph records, books, shirts, cocktail napkins, cocktail glasses, liquor bottle holders, garters, ties, matches, playing cards, pajamas, cuff links, pins and earrings.

7.

The plaintiff HMH has widely publicized the name "Playboy" through its magazine and through the sale of said consumer items so that the said trade-mark has become and is identified by the general public with plaintiff HMH and its products.

8.

On December 28, 1954, the United States Patent Office issued to plaintiff HMH Certificate of Trade Mark Registration No. 600,018 for the trade-mark "Playboy" for a monthly magazine. On March 5, 1963, the United States Patent Office issued to plaintiff HMH Certificate of Trade Mark Registration No. 746,367 for the service-mark "The Playboy Club" for operating private social clubs which feature food, drinks and entertainment. At all times since the issu-

ance of each of the foregoing registrations, plaintiff has been and still is the owner of each of said trade-marks, service-marks, and trade-mark and service-mark registrations. Each of the trade-mark and service-mark registrations listed and referred to herein are valid and subsisting.

9.

About December of 1959, plaintiff HMH began to solicit membership applications for a Playboy Key Club in Chicago, Illinois, featuring food, drink and entertainment, and made plans for opening such a Key Club identified by the trade-mark and service-mark "Playboy" and, shortly thereafter, granted a controlled license to the plaintiff Playboy Clubs, giving it the exclusive right to use and/or sublicense (under controlled licenses) said marks as service-marks to identify Key Clubs operated by it in Chicago, Illinois, and in other principal cities in the United States. Since January, 1960, sublicenses of plaintiff Playboy Clubs have continuously used the service-mark "Playboy" for their Key Clubs and since about the middle of 1960, similar Key Clubs have been opened by sublicensees of plaintiff Playboy Clubs and are now operating in Miami, Florida; New York City; Phoenix, Arizona; New Orleans, Louisiana; St. Louis, Missouri; Detroit, Michigan; Kansas City, Missouri; Baltimore, Maryland; Cincinnati, Ohio; Los Angeles, California; Jamaica; and Atlanta, Georgia. Plaintiff HMH has exercised great care in the selection of such licensees and is controlling and has controlled the nature and the quality of the services rendered at the Key Clubs operating in said cities under and in association with said trade-marks and service-marks, to the end that the nature and quality of such services would be compatible with the nature and quality of the magazine and products of plaintiff HMH and its goodwill symbolized by said trade-marks and service-marks. Plaintiff HMH has taken an active part in promoting said Key Clubs operated under its said trade-marks and service-marks and the consuming public

recognizes the Key Clubs and the services of such licensee under said trade-marks and service-marks as having been approved, licensed or sponsored by plaintiff HMH. The plaintiff's said trade-marks and service-marks where used in connection with a restaurant, night club, or similar business, mean and are understood to mean to the general purchasing public a restaurant, night club or similar business licensed, approved, sponsored, recommended or somehow connected with plaintiff HMH. As a result of advertising and promotion, the plaintiff Playboy Clubs International, Inc., has a membership of over 440,000 members, residing in every state in the United States, including the State of Georgia.

10.

The gross receipts of International and the Playboy Clubs for the fiscal year ending August 31, 1965, amounted to $21,560,113.00, and the promotion expense for such period amounted to $1,495,368.00.

11.

Plaintiff HMH is the owner of the federally registered trade-mark and service-mark "Playmate". It first used the mark in the January 1954 issue of *Playboy* magazine to identify a regular feature, now the center spread of the publication, a picture of a beautiful girl who is called "Playboy's Playmate of the Month". In excess of 170,000,000 copies of the *Playboy* magazine containing said feature had been sold prior to October 20, 1965. Plaintiff HMH has sold numerous other products and services under the mark "Playmate", and it has been used as a service-mark in the Playboy Clubs. Each Playboy Club has had since its opening a room designated as the "Playmate Bar".

12.

The mark "Playmate" has been widely publicized by HMH and International.

13.

Plaintiff HMH is the owner of the following trade-mark and service-mark registrations, each of which is valid and subsisting:

| Mark | Date of Registration | Registration Number |
|---|---|---|
| Playboy for monthly magazine | 12/28/54 | 600,018 |
| The Playboy Club for private social club featuring food, drink and entertainment | 3/5/63 | 746,367 |
| Playboy for operation of establishments which feature food, drink and entertainment | 5/12/64 | 769,707 |
| Playboy's Playmate of the Month for feature in magazine | 5/6/58 | 661,391 |
| Playmate for calendars | 9/26/61 | 721,987 |
| Playmate for perfume | 5/7/63 | 749,223 |
| Playmate for bracelets, etc. | 9/29/64 | 777,867 |

14.

In 1958, defendant Othal L. Turner entered the night club business by purchasing an existing club known as The Anchorage located at 789 Ponce de Leon, Atlanta, Georgia. Defendant Turner owned and operated The Anchorage through the corporate defendant.

**15.**

In April 1962, the corporate defendant registered the trade-name "Atlanta's Playboy Club" and "Playmate" in the Clerk's office of the Superior Court of Fulton County, Georgia. In May or June of 1962, defendant Othal L. Turner with knowledge of the use of the mark "Playboy" by plaintiff HMH, including its use in connection with *Playboy* magazine, and with knowledge of the existence of the Chicago and Miami Playboy Clubs in the chain franchised by International, caused the corporate defendant to change the name of The Anchorage to "Atlanta's Playboy Club" and began to advertise under that style. One of his advertisements contains a picture of a girl dressed in a costume closely resembling the Bunny costume made famous by plaintiff HMH. Upon changing the name of The Anchorage, defendant Turner also began to call one of the rooms in his club the "Playmate Lounge". The name "Atlanta's Playboy Club" is confusingly similar to the names by which International's franchisees are known (i. e., the *Chicago* Playboy Club, the *Miami* Playboy Club, etc.). Telephone calls received by defendant Turner and correspondence received by plaintiffs showed actual confusion on the part of the public as to an affiliation between defendants' operation and those franchised by plaintiffs.

**16.**

Following the entry of the temporary injunction herein, defendant Turner began to use and has continued to use the name "Playmate Lounge" in another club in downtown Atlanta owned by a separate corporation of which he is also the sole stockholder and controlling manager.

**17.**

The average monthly circulation of *Playboy* magazine in the State of Georgia for the first six months of 1962 was 12,077 copies. Between November 1959 and May 31, 1962, 70,561 direct mail pieces were sent into the State of Georgia by International soliciting prospective keyholders for the Playboy Clubs. By January 26, 1962, International had already sold 640 keys to Georgia residents.

From the foregoing findings of fact, the Court makes the following

## CONCLUSIONS OF LAW

**1.**

The matter in controversy exceeds the sum or value of $10,000.00, exclusive of interest and costs.

**2.**

Jurisdiction is founded on diversity of citizenship and the requisite amount involved, and is also founded on the existence of questions arising under the laws of the United States. This action arises under the Lanham Act of 1946, 15 U.S.C. Sections 1057(b) and 1116, and under Sections 1332 and 1338 of the Judicial Code (28 U.S.C. Secs. 1332, 1338).

**3.**

Venue is properly laid in this district pursuant to Section 1391, Title 28, United States Code.

**4.**

■ The defendants wilfully adopted the trade-marks and service-marks of the plaintiff HMH and have thereby wilfully infringed the trade-marks and service-marks of plaintiff HMH, with the intention and for the purpose of passing off their aforesaid business as a business licensed, sponsored, approved, recommended or somehow connected with the plaintiff HMH or its nationally known magazine *Playboy*, or with the Key Clubs licensed by the plaintiff HMH.

**5.**

■ Defendants' use of the name "Atlanta's Playboy Club" in connection with their business has and will continue to damage the rights of the plaintiff HMH in and to the names and marks of "Playboy" and "Playmate", and the goodwill symbolized thereby, because the public by reason of the popularity of said trade-marks and service-marks, has been and is likely to continue to be deceived or confused into believing that there is some trade connection between plaintiffs and defendants.

820

### 6.

■ Plaintiffs have sustained substantial damages by reason of defendants' interference with the plaintiff International's exclusive right to use the trademarks and service-marks "Playboy" and "Playmate" licensed to it by plaintiff HMH.

### 7.

The defendants have wilfully interfered with the legitimate expansion of the business of the plaintiffs in the operation of their Playboy Key Clubs.

### 8.

The defendants, by the acts mentioned hereinabove, have engaged and are engaging in unfair trade practices and unfair competition against the plaintiffs, have improperly realized profits, and will continue to cause plaintiffs irreparable harm and to realize profits improperly unless enjoined by this Court.

### 9.

The plaintiffs have no adequate remedy at law.

### 10.

The defendants, their agents, servants, employees and attorneys, and all those in active concert and participation with the defendants, and each of them are hereby enjoined from:

(a) Using, directly or indirectly, the trade-mark and service-mark "Atlanta's Playboy Club" or any confusingly similar mark, in connection with the operation of the night club and restaurant or any other business;

(b) Using "Playboy" or "Playmate" (in any phonetic spelling or misspelling) or any mark or name confusingly similar thereto, under which to conduct a night club and restaurant or any other business or portion thereof;

(c) Performing any acts having the effect of, directly or indirectly, representing that any business operated or owned by defendants is connected with plaintiff HMH or is sponsored, approved, recommended or licensed by plaintiff HMH.

It is so ordered.