AMOCO OIL COMPANY,
Plaintiff-Appellant,

v.

RAINBOW SNOW, INC. and Scott G. Van Leeuwan, Defendants-Appellees.

No. 85–2686.

United States Court of Appeals,
Tenth Circuit.

Jan. 9, 1987.

As Amended Jan. 20, 1987.

Robert S. Campbell, Jr. (Louise T. Knauer with him on the brief), of Watkiss & Campbell, Salt Lake City, Utah, for plaintiff-appellant.

Bryce E. Roe (Jodi Knobel Feuerhelm, with him on the brief), of Fabian & Clendenin, Salt Lake City, Utah, for defendants-appellees.

Before BARRETT and SEYMOUR, Circuit Judges, and CHILSON *, District Judge.

BARRETT, Circuit Judge.

This is the second appeal taken by Amoco Oil Company (Amoco) from the district court's denial of Amoco's motion for a preliminary injunction in this trademark infringement case. In *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556 (10th Cir. 1984), we reversed the order denying Amoco's motion for a preliminary injunction and remanded for further proceedings.

In remanding, we observed that the district court did not have the benefit of the guidelines we announced relating to the issue of likelihood of confusion in the use of trademarks. We placed particular emphasis on whether the use of the allegedly infringing mark of Rainbow Snow created the mistaken belief that Rainbo Oil and Rainbow Snow were business affiliates or that the products sold by both were of

---

* The Honorable Hatfield Chilson, United States District Judge for the District of Colorado, sitting by designation.

common sponsorship. Thus, this ingredient was, on remand, to be considered by the district court, in addition to others set forth in Restatement of Torts § 729 (1938). The issue to be decided is whether defendant Rainbow Snow had, without the consent of Amoco, used a colorable imitation of Amoco's registered mark in the sale of goods, resulting in confusion and false representation in violation of the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a).

We shall not repeat in detail the factual background giving rise to this litigation. It is set forth in *Amoco Oil Co. v. Rainbo Snow, supra.* Upon remand the parties stipulated that no new evidence would be offered. The district court considered only the evidence admitted during the hearing on the motion for preliminary injunction held May 31 and June 1, 1983. (R., Vol. IV). The hearing on remand, consisting of arguments of counsel, was held on March 21, 1985. We thus conclude that the status of the parties remained unchanged since the initiation of this suit by Amoco on December 6, 1982.

Amoco's complaint alleged, *inter alia,* that: by reason of the long use and extensive sales and advertising under its registered mark, it has built up a valuable goodwill which is symbolized by the "Rainbo" mark; Rainbow Snow's mark has been used in direct competition with Amoco's "Rainbo" service stations, selling similar refreshments; Rainbow Snow had full knowledge of Amoco's "Rainbo" mark before using its mark; Rainbow Snow's use of its mark has caused and is likely to cause further mistake, deception and confusion with Amoco's mark, and is likely to result in the mistaken belief by purchasers and others that Rainbow Snow, or its products or services, are in some way legitimately connected with, sponsored or approved by Rainbo Oil; and Rainbow Snow has adopted and used its mark knowing and intending that its imitation of Amoco's "Rainbo" mark would cause confusion, mistake and deception for the express purpose of creating a mistaken public identification and confusion of Rainbow Snow's business with that of Amoco's (R., Vol. I, pp. 1–8).

The defendant, Rainbow Snow, in its Amended Answer to Complaint, demanded a jury. Thus, the infringement issue presented to the district court in relation to the motion seeking preliminary injunctive relief shall be decided by a jury upon trial on the merits.

We are not dealing in this case with products manufactured or marketed with registered marks upon them or their packages. Cases involving such products or purchases raise questions of confusing similarity of marks and products. The products arguably in competition between the parties in this case are the "snow cone" sold from Rainbow Snow's eighteen stands which operate for about four months through the summer and a carbonated "slush" drink sold from Amoco's "Rainbo" stations. The "snow cone" consists of shaved ice with some thirty-six kinds of flavored syrups.

Under the Lanham Act, the term "trademark" is defined as including "[a]ny word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify, and distinguish his goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127 (as amended Nov. 8, 1984, P.L. 98–620, Title I, § 103, 98 Stat. 3335). Liability for trademark infringement is imposed under 15 U.S.C. § 1114(1) for the "[u]se in commerce [of] any reproduction, counterfeit, copy or colorable imitation of a registered mark ... likely to cause confusion, or to cause mistake, or to deceive...."

■ It is well established that the basis for trademark rights is the association in the public mind of the mark with goods. Thus, one of the main goals of the Lanham Act is to protect the public from deception, such as occurs when, for example, an alleged infringer, by imitating or closely copying the plaintiff's mark, intends to deceive the public as to the source of the goods. In order to establish infringement, a plaintiff must establish the distinctive-

ness of his trademark. This element is all-important in determining whether, under the Lanham Act, there exists such confusion as to service, affiliation or sponsorship, that the right of the federally registered mark should be enforced.

The testimony and other evidence admitted at the May 31 and June 1, 1983, hearings disclosed that Amoco obtained the "Rainbo" Oil Company trademark in October, 1976, and business expanded rapidly. By 1982, there were twenty-four Rainbo service stations consisting of standard buildings where gasoline was sold on the self-service basis and convenient food items and soft drinks were available, including an "ice slush" drink similar to Rainbo Snow's "snow cone." (R., Vol. IV, pp. 15–23). Rainbo Oil also sells fountain drinks. *Id.* at 28. Four of the Rainbow Snow structures are located in close proximity to Rainbo Oil Company's buildings.

Several witnesses at the 1983 hearings testified about the likelihood of confusion between the Rainbo Oil and Rainbow Snow trademarks. Mr. Frank Sida, general manager of Rainbo Oil, testified that he and his employees had received about fifteen contacts involving problems of confusion between the two businesses. *Id.* at 40.

Mr. Richard Q. Bailey, an expert designer, testified that the visual impact of the Rainbo Oil Company and Rainbo Snow marks is "confusingly similar." *Id.* at 54. He stated that although the rainbow design is a very common property, the similarity impact was not such as to create confusion between Rainbo Oil's trademark and that of such "rainbow" signs used by Hilton Hotels and others in the Salt Lake City area. *Id.* at 54–55.

Ms. Ann Marie Boyden, an advertising executive, believed that the Rainbo Oil trademark-logo was a strong mark and "very memorable." *Id.* at 64. On the assumption that the logos used by Rainbo Oil and Rainbow Snow are confusingly similar, Ms. Boyden testified that the business impact of such confusion could involve two problems:

One of them would be the quality control which is extremely important in the long-term reputation of any business. Quality control in that we have a similar looking stand over which Rainbo Oil people have no control whether it's good or bad or clear or dirty or if it makes people sick, if it's open or closed and so forth. Then the second one would be just the notion of dilution of the trademark, that is, that it is in locations that are dissimilar that it is expanding their line without their choice essentially.

*Id.* at 68.

In cross-examination, Ms. Boyden did not regard the use of the "rainbow" in both of the marks as the prime problem of the confusion between the two logos. *Id.* at 70. She stated that Rainbo Oil Company's buildings carry out the logo idea with the colored stripes going around the building, whereas the round ten feet by six feet Rainbow Snow buildings are the logo. *Id.* at 73. She opined that the two marks suggest a common sponsorship. *Id.* at 74.

Ms. Lenora Berendt, who served as personnel manager of Rainbo Oil Company during the summer of 1972, testified that she received three or four calls from people seeking employment with Rainbow Snow. She informed the callers that Rainbo Oil and Rainbow Snow were not affiliated. *Id.* at 75–76.

Mr. Frankie R. Price, who served as a Rainbo Oil Company station manager in Salt Lake City for one year during 1982, testified that he received four inquiries relative to employment possibilities with Rainbow Snow and that about a dozen people inquired when Rainbow Snow's booth would open. *Id.* at 78. In that instance, the Rainbow Snow outlet was located some thirty feet from the Rainbo Oil outlet. *Id.* Mr. Price informed the persons inquiring that the two companies were not affiliated. He did not testify that any complaints had been made about Rainbow Snow's product or service.

Ms. Paulette Arrington, labor economist with the Utah Department of Employment Security, testified that she phoned Rainbo

Oil inquiring whether they were accepting employment applications at Rainbow Snow because her daughter wished to have summer employment. She believed that the two businesses were affiliated because their signs were very similar. *Id.* at 81–83.

Mr. Michael E. Coones, who had served as a Rainbo Oil Company manager for four years, testified that during the period from May through October, 1982, he was asked by some customers when he was going to open the Rainbow Snow "shack" located about fifty yards away from the Rainbo Oil station. Also, some customers inquired whether they could pay for their snow cones with the same check used to purchase gasoline and others inquired about employment with Rainbow Snow. *Id.* at 84–85.

Mr. Martin Lynn Townsend, owner of a sign company in Salt Lake City, testified that about March, 1982, Mr. Scott G. Van Leeuwen, President of Rainbow Snow, called at his office and presented a proposed logo for Rainbow Snow's business. Mr. Townsend testified: "I mentioned when he showed it to me because I'd been doing work with Rainbo Oil, and I said, wow, isn't that similar." *Id.* at 90. He recalled Mr. Van Leeuwen remarking that he did not think there would be any problem. *Id.*

Mr. Scott G. Van Leeuwen, age twenty-six, President of Rainbow Snow, testified that he and his wife, both of Salt Lake City, formed a corporation known as Rainbow Snow, Incorporated in December, 1981, to set up the snow cone business. Mr. Van Leeuwen was familiar with the Rainbo Oil Company mark and the Rainbo Oil stations before adopting the Rainbow Snow mark. *Id.* at 98. He contends that he determined to use the name of Rainbow Snow and the symbol of the rainbow in the mark after his sister phoned him from Hawaii suggesting that the name "rainbow" be used in the business name. *Id.* She also suggested the use of the rainbow mark. *Id.* at 104–05.

The Rainbow Snow name was registered with the Utah Secretary of State on Octo-ber 5, 1981. *Id.* at 103. Mr. Van Leeuwen recalled that during his short meeting with Mr. Townsend and after he showed Mr. Townsend the sketch of the proposed Rainbow Snow logo, Mr. Townsend remarked that he did all of the painting work for Rainbo Oil. *Id.* at 109. He had no recollection that Mr. Townsend remarked that the Rainbow Snow logo was similar to that of Rainbo Oil. *Id.* at 110. Of the eighteen sites of Rainbow Snow stations in 1982, four of them were located either next to or in close proximity (two blocks to half a block) to Rainbo Oil stations. *Id.* at 113–14. Mr. Van Leeuwen stated that these locations were simply coincidental inasmuch as "There's only so much commercial property in Salt Lake." *Id.* at 114. Mr. Van Leeuwen did not consider the snow cone to be in competition with Rainbo Oil's slush drink because you "drink" the Rainbo Oil slush and "eat" the shaved ice of the snow cone. *Id.* at 116. He stated that the products are "totally different." *Id.* Van Leeuwen stated that he and his wife operated the 1982 business at a loss. *Id.* at 118. The Van Leeuwen's grossed about $125,000 from the 1982 operation and each took about $2,500 for their labor. *Id.* at 118. They hoped for a gross of $180,000 during the four summer months of 1983 which might result in a $10,000 profit. *Id.* at 121. With respect to selecting sites for Rainbow Snow outlets, Mr. Van Leeuwen stated that he undertook to negotiate leases at sites like "big parking lots where it's easy to pull in and out. I've got to make sure there's a restroom I could rent close by. I've got to make sure there's enough room to set it [the 10′ by 6′ round structure] back and not be in a traffic lane. Then I've got to make sure the city passes it. All the different things like that." *Id.* at 121–22. He testified that to change the Rainbow Snow logo would require re-lettering the sign at an estimated cost of $8,000. Mr. Van Leeuwen did not believe that he "could come up with that." *Id.* at 125.

On the basis of this evidence, Amoco argues that the district court erred in refusing to grant a preliminary injunction. In *Koerpel v. Heckler,* 797 F.2d 858, 866 (10th Cir.1986), we observed:

In the Tenth Circuit, the following four criteria must be satisfied by a prima facie showing before a preliminary injunction will be granted:

(1) (A) movant must establish that the injunction would not be adverse to the public interest; (2) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) that the movant will suffer irreparable injury unless the injunction issues; and (4) that there is substantial likelihood that the movant will eventually prevail on the merits.

*City of Chanute v. Kansas Gas and Electric Co.,* 754 F.2d 310, 312 (10th Cir. 1985), citing *Lundgrin v. Clayton,* 619 F.2d 61, 63 (10th Cir.1981).

With regard to the fourth criterion, the likelihood of success on the merits, we have held that the plaintiff must establish that his success is probable. *Citizens Concerned, etc. v. City of Denver,* 628 F.2d 1289 (10th Cir.), *cert. denied* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1980). The district court found, in applying the Restatement of Torts § 729 (1938) factors that even though the Rainbo Oil and Rainbow Snow marks:

"[a]re similar in appearance, pronunciation, translation, and suggestion, the court does not believe that the similarity is sufficient to create a likelihood that 'an ordinary prospective purchaser, exercising due care in the circumstances,' *Avrick v. Rockmont Envelope Co.,* 155 F.2d 568, 572 (10th Cir.1946), would believe that the Rainbow Snow outlets are affiliated with Rainbo gasoline and convenience food outlets. The simple fact that both rainbo and rainbow sound the same is not sufficient to create a likelihood of confusion of sponsorship. The public is not so naive as to believe that any business that employs a rainbow as part of its name is affiliated with Rainbo Oil."

R., Supp. Vol. I, p. 4.

On appeal, Amoco contends that (1) the district court clearly erred in failing to find a likelihood of confusion of sponsorship or affiliation between the parties. Amoco argues that the court's finding that similar confusion would have arisen if the snow cone structure next to a Rainbo station were identified only by the words "snow cones" without the rainbow coloring, is one of mere speculation without any basis in the record. Further, Amoco asserts that the court committed clear error in finding that confusion caused in part by proximity is not actionable. Amoco contends that the court failed to weigh all relevant factors in determining the likelihood of confusion (court improperly evaluated geographic proximity) and misapprehended the prerequisites for a finding of trademark infringement (while the court believed that confusion must be caused by infringement; the opposite is true). Amoco also asserts that even if the "clearly erroneous" standard of review is applied, reversal is required because the marks are very similar (the most important factor in determining the likelihood of confusion between the two marks) and because, contrary to the district court's finding, the parties' products (snow cones versus ice slushes and soft drinks) are similar and the marketing techniques are confusingly similar; (2) the court erred in finding that the Rainbo mark was weak and in finding that Rainbow Snow's use of the mark during the pendency of the action will not cause Rainbo Oil irreparable harm; (3) the court erred in failing to find that the balance of hardships favors Rainbo Oil; (4) the court erred in finding that the public interest mandated denial of the injunction, and (5) the court abused its discretion in failing to issue an injunction and this court should do so.

▮ The determination of the issue of likelihood of confusion in the use of trademarks in this circuit is a question of fact subject to review under the "clearly erroneous" standard. *Beer Nuts, Inc. v. Clover Club Foods Company,* 805 F.2d 920 (10th Cir.1986); *J.M. Huber Corp. v. Lowery Wellheads, Inc.,* 778 F.2d 1467, 1471 (10th

Cir.1985); *Hot Shot Quality Prod., Inc. v. Sifers Chem., Inc.,* 452 F.2d 1080, 1081 (10th Cir.1971). Findings, under the amendment to Rule 52(a) effective August 1, 1985, "whether based on oral or documentary evidence" shall not be set aside unless clearly erroneous. *See also, Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Thus, it is now settled that deference must be paid to the fact finder when a finding rests on inferences drawn from undisputed facts or documentary evidence, or is based upon matters involving judicial notice.

■ Amoco has vehemently contended that the district court "fundamentally ignored undisputed evidence of actual confusion" and its own findings that the two marks are similar in appearance, pronunciation, verbal translation and suggestion, in concluding that Amoco has not demonstrated the likelihood that it will succeed in proving confusion of affiliation or sponsorship (Appellant's Opening Brief, pp. 18–19). Amoco's argument seems to be that because there was no evidence in direct contradiction to the testimony that showed customer perceptions that Rainbo Oil and Rainbow Snow were affiliated, the trial court was absolutely bound to conclude that customers were confused about affiliation. We do not believe this to be the rule. In addition to testimony, the district court considered a number of exhibits including photographs of the respective marks, photographs and maps of the various Rainbo Oil stations and Rainbow Snow outlets, photographs of a variety of other business in the Salt Lake area employing the symbol of the rainbow; and, in several instances, a combination of the rainbow symbol, and the name "rainbow" in other business marks. (R., Vol. II, Defendant's Exhibits G, H and I). One of those exhibits is a photo of a mark with the rainbow symbol and the name "Rainbow Sherbet," another contains a rainbow symbol advertising a 7–Eleven store's sale of the drink "Freedom". The trial court thus had a basis, a foundation, for its findings and conclusions that:

[T]he simple fact that both rainbo and rainbow sound the same is not sufficient to create a likelihood of confusion of sponsorship. The public is not so naive as to believe that any business that employs a rainbow as part of its name is affiliated with Rainbo Oil.

R., Supp. Vol. I, p. 4.

\* \* \* \* \* \*

[s]imilar confusion would have arisen if a snow cone shack next to a Rainbo station were identified only by the words "snow cones," without the rainbow coloring. Customers would still have asked Rainbo employees when they could buy snow cones, whether they could pay for a snow cone and gas with the same check, and whether jobs were available.

R., Supp. Vol. I, p. 6.

Amoco contends that these findings are sheer speculation without basis in the record. We disagree. The findings constitute the trial court's perception of facts based upon documentary evidence and reasonable inferences drawn therefrom, inferences from undisputed facts and matters involving judicial notice. While the "findings" may be more properly classified as conclusions derived from the fact finder's *evaluation* of the evidence and the surrounding circumstances, such a "mixed bag" is, we believe, inevitable in the process of determining the likelihood of confusion under the criteria set forth in Restatement of Torts § 729 (1938). Determinations involving "suggestion," "intent," and "the degree of care likely to be exercised by purchasers" require that the fact finder reach conclusions based on personal evaluation of evidence and reasonable inferences therefrom. On appeal, our task is to decide whether there is a reasonable basis for the trial court's findings and conclusions.

In *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 941, 942 (10th Cir.1983), we observed that in evaluating similarity between trademarks the marks must be compared in the light of what occurs in the marketplace, not in the courtroom, and that the court as fact finder must weigh all of

the Restatement of Torts § 729 (1938) factors in determining likelihood of confusion. The process of evaluating similarity between trademarks is not confined, as Amoco seems to argue, to the undisputed testimony of its experts and other witnesses. The district court had before it demonstrative evidence, including many photographs of the respective marks of the parties and similar marks employing the symbol of the rainbow used by businesses in the Salt Lake City area. A fact finder is entitled to rely on demonstrative evidence to reach a conclusion contrary to an opinion of an expert witness if there is a reasonable basis therefor. We also observe that in this case the district court took judicial notice of the areas where the respective outlets were located and traffic patterns incident thereto. (R., Vol. I, pp. 51–52). The district court obviously applied its personal insight and knowledge of the area and the marketplace.

The district court found that Rainbo Oil's mark is weak, contrary to the testimony of Ms. Boyden. The court also determined that the Rainbo Oil mark is arbitrary and fanciful and that it does not suggest anything about Rainbo Oil's food or drink products. These findings are not clearly erroneous. There is substantial evidence, together with reasonable inferences drawn therefrom in the context of the surrounding circumstances, in support of the district court's findings that (a) the similarities in the two marks are not sufficient to create a likelihood of confusion of sponsorship or affiliation in the marketplace, (b) Mr. Van Leeuwen did not intend to create confusion of affiliation in adopting the Rainbow Snow mark, (c) the parties' marketing techniques are sufficiently different so as to not create a likelihood of confusion concerning the affiliation or sponsorship of the businesses, and (d) the degree of care likely to be exercised by prospective purchasers is reduced by the low cost of snow cones but this factor, when considered with the other Restatement of Torts § 729 (1938) factors, is insufficient to create a likelihood of confusion about the affiliation of the outlets.

The district court adopted its "previous discussion" of the "remaining" preliminary injunction issues. (R., Supp. Vol. I, p. 6). On that basis, we relate back to the district court's order of July 28, 1983, for further findings and conclusions. (R., Vol. I, pp. 41–62). After relating the applicable facts and law the district court delineated its findings and conclusions on the issues of Similarity, Intent, Market, Care, Irreparable Harm, Balancing Inquiries and Public Interest. *Id.*

■ In determining whether Rainbo Oil would suffer irreparable harm unless the injunction issued, the district court recognized that trademark infringement "by its very nature" results in irreparable harm to the owner of the mark, *Processed Plastic Co. v. Warren Comm., Inc.*, 675 F.2d 852, 858 (7th Cir.1982) unless the trademark is already weak. The district court, citing to *Esquire, Inc. v. Esquire Slipper Mfg. Co.*, 243 F.2d 540, 543 (5th Cir.1957) and other authorities (*Id.* at 57) predicated the "unless" on the fact that if the senior mark is weak, it is entitled to little protection against dilution. The court observed that there are some ninety businesses in the State of Utah utilizing "rainbows" as part of their corporate name. The court concluded that:

> Because of the wide use of the word (rainbow) and visual depiction (at trial defendant introduced pictures of multi-colored rainbows used to advertise over 35 businesses in the Salt Lake City area) of the rainbo(w) throughout Utah, defendant's use of its mark during the pendency of the action will have a negligible effect on plaintiff's already diluted mark. (Footnotes deleted).

*Id.* at 60.

We hold that the district court's finding that Amoco would not suffer irreparable harm if an injunction does not issue is not clearly erroneous. *First Bank v. Reid,* 757 F.2d 230 (10th Cir.1985); *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358 (10th Cir. 1974); *Sta-Rite Indus., Inc. v. Johnson,* 453 F.2d 1192 (10th Cir.1971), *cert. denied,* 406 U.S. 958, 92 S.Ct. 2062, 32 L.Ed.2d 344

(1972). As a prerequisite to the granting of a preliminary injunction, the moving party must show, in addition to the likelihood of success on the merits, that it will suffer irreparable injury unless the injunction issues. *Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir.1980).

■ Although it has been held that in trademark cases, confusing similarity between the trademarks is sufficient injury to warrant the issuance of a preliminary injunction, *Processed Plastic Co. v. Warren Comm., Inc, supra, P. Daussa Corp. v. Sutton Cosmetics,* 462 F.2d 134 (2nd Cir. 1972), and that a movant who has established a likelihood of confusion is "not required to show that it lost sales or incurred other damage," this court has held that delay in seeking relief undercuts any presumption that infringement *alone* has caused irreparable harm *pendente lite. GTE Corp. v. Williams,* 731 F.2d 676 (10th Cir.1984). In the instant case, although Amoco did not delay seeking relief, we deem it important to note that a period in excess of two years expired following the date of the district court's original order denying Amoco the injunctive relief requested (July 28, 1983) and the order of the district court following remand, which again denied Amoco the injunctive relief requested (October 10, 1985). We have previously noted that following remand no new or additional evidence was presented to the district court. Thus, we assume that there were no changes in the circumstances during the two-year period. That being the case, we hold that Amoco has not demonstrated a specific harm other than that which may be presumed to exist if there is a likelihood of confusion. There is no showing that Rainbow Snow's operation will damage the goodwill or reputation of Rainbo Oil or that Amoco's inability to control the quality of the Rainbow Snow product (snow cone) will cause irreparable injury to Amoco. On the contrary, the record shows that unless the status quo is maintained until this case is decided by a jury on the merits, Rainbow Snow's ability to continue in operation will be seriously impaired. There is no real showing that Rain-

bo Oil's business has been financially impaired or that its reputation and goodwill has been tarnished by virtue of Rainbow Snow's operations. We hold that the burden of hardships weighs in favor of Rainbow Snow.

Finally, we observe that the issue of likelihood of confusion of affiliation or sponsorship between the parties in this case is, on the merits, serious, substantial, difficult and doubtful, making it a fair ground for litigation. *Kenai Oil & Gas, Inc. v. Dept. of Int. of U.S.,* 671 F.2d 383, 385 (10th Cir.1982). The primary function of a preliminary injunction, unlike the relief sought by Amoco in the case at bar, is to preserve the status quo pending a final determination of the parties' rights. *Otero Sav. & Loan Ass'n. v. Federal Reserve Bank,* 665 F.2d 275 (10th Cir.1981); *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir.1975). In any event, a grant or denial of a preliminary injunction is within the discretion of the trial court and may not be set aside unless it is based on an error of law or constitutes an abuse of discretion. *Vance v. State of Utah,* 744 F.2d 750 (10th Cir.1984). We find no cause to set aside the district court's order.

AFFIRMED.

SEYMOUR, Circuit Judge, concurring.

I concur in the judgment in this case because I agree with the majority's conclusion that Amoco failed to make a sufficient showing of irreparable injury. See *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir. 1980); *see also GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984) (irreparable injury must be shown when seeking preliminary injunction for alleged trademark infringement).