505 P.2d 298

**COMMONWEALTH NATIONAL BANK,**
**Plaintiff,**

v.

**KENNEDY COMPANY et al., Defendants.**

**The KENNEDY COMPANY et al., Cross-**
**Complainants and Appellants,**

v.

**COMMONWEALTH NATIONAL BANK et**
**al., Cross-Defendants and Respondents.**

**No. 12786.**

Supreme Court of Utah.

Jan. 4, 1973.

---

Merrill K. Davis and Weston L. Bayles, Salt Lake City, Sidney DeGoff, San Francisco, Cal., for appellants.

Albert J. Colton and Kent S. Lewis, of Fabian & Clendenin, Salt Lake City, for respondents.

ELLETT, Justice.

The Commonwealth National Bank as plaintiff sued the Kennedy Company and the partners thereof on a promissory note. Judgment was confessed except as to the amount of attorney's fees. The Kennedys counterclaimed because of the dishonor of a draft which they had issued and also because of a claimed wrongful garnishment.

After the action was commenced to recover on the note, the plaintiff on August 8, 1969, caused the clerk of the district court where the action was pending to issue a writ of garnishment whereby funds of the Kennedy Company in a local bank were attached. The writ was served on the bank on August 11, 1969. Three days later upon oral motion and without notice to the bank, the appellants persuaded one of the trial judges to release the writ of garnishment. However, the order releasing the same was not signed until December 5, 1969, when it was signed nunc pro tunc as of August 14, 1969.

On September 11, 1969, the plaintiff filed a notice with the court to reinstate the garnishment. Due and proper notice was given to the appellants, and a hearing was had before a trial judge. After receiving evidence and hearing the arguments of counsel, the judge on October 21, 1969, ordered the release of garnishment to be set aside and the original garnishment reinstated on the grounds and for the reason that it had been improperly released in the first place.

In the meantime, the Kennedys had withdrawn the money from the bank, and consequently there was nothing to be held pursuant to the reinstated garnishment. While it was the bank which lost by the "off again, on again, gone again Finnegan" activity in the trial court, it is the appellants who claim the damage.

At the commencement of the trial of this case on November 22, 1971, a third judge

refused to allow any evidence of wrongful garnishment to be given for the reason that the question was, as he said, res judicata in that it had been determined on a full hearing that the garnishment was properly issued.

█ In their brief the appellants make no assignment of error on the part of the trial court for refusing to consider the question of wrongful garnishment, nor did they tender to the court any proof as to why the garnishment was not properly issued or as to any damages they sustained by reason of the garnishment. They do assign errors on the part of the judge who set aside the release of garnishment and cite some law about "injunctions" and "due process of law" which is not very helpful in a garnishment case. We cannot see how there was any prejudicial error in this matter for the reason that appellants defeated the garnishment by persuading a judge to release it without giving notice to the plaintiff. Any money paid to the attorney for that improper proceeding or for representing them on the hearing to reinstate the garnishment should not be chargeable to the plaintiff.

█ There is no claim of lack of good faith in the securing of the writ; and since there was no tender of proof of any damage sustained, the damage would be nominal even if the court erred in reinstating the writ. We should not reverse and remand the case for a new trial where the damage could only be nominal.[1]

As to the counterclaim for wrongfully refusing to pay a draft, we think the jury had sufficient evidence before it to warrant its verdict of no cause of action.

The appellants had two checking accounts with the plaintiff bank, a personal account in the name of Charles R. Kennedy or Rebecca Z. Kennedy and one in the name of Kennedy Company Enterprises. The latter account had authorized signatures of "Charles Kennedy" and "R. Z. Kennedy." The coded number on the draft in question referred to the account of Kennedy Company Enterprises, although the draft itself contained the name of The Kennedy Company upon it. It was in the amount of $5,000 and payable to one Robert McCluskey and signed "Rebecca Kennedy."

The draft was an unusual one in that it had advertisements printed on it and a place to write the transit number of whatever bank it happened to be drawn upon. It was printed by the appellants and was not a draft printed and furnished by the plaintiff bank.

Each bank in the United States has an individual transit number which identifies the bank and assists other banks in directing checks and drafts to the proper payor.

---

1.  66 C.J.S. New Trial § 75 b.

The transit number of the plaintiff bank was 11–97/1210, while that placed on the draft of the appellants was 93–58/921, which is the transit number of a bank in Bozeman, Montana. When the draft finally reached the plaintiff bank, it was returned to Mr. McCluskey for the reasons above set out.

Charles Kennedy claims that he suffered damage for injury to his reputation and impairment of his health caused by the return of the *partnership* draft. This is of no concern to us unless there was error on the part of the court, inasmuch as the jury found that the plaintiff bank did not wrongfully refuse or fail to pay the draft in question.

We recently held that the account of Braswell Motor Freight Lines was not the same as that of Braswell Motor Freight Lines, Inc.[2] We must also hold that a draft drawn on the account of "The Kennedy Company" would not require the bank to pay it out of funds of an account in the name of "Kennedy Company Enterprises."

■ The appellants took the deposition of a close friend and business associate of Charles Kennedy who at the time the draft was returned was president of the plaintiff bank. When asked if he knew any reason why the check had been returned, he answered, "No. We sent it back, as we apparently did. It was an internal mistake."

At trial the objection of the plaintiff to the answer was sustained on the ground that it called for a conclusion of the witness. It also was not shown that the witness had any knowledge of the draft or of the reasons why it was not paid, or that he was familiar with the authorized signatures on the account of Kennedy Company Enterprises.

In speaking of the procedures when a check was returned unpaid, the witness on cross-examination at his deposition stated, "Look, I was president of the bank, and I didn't get into every detail. Now, the cashier can give you an answer to the question if you want to subpoena him. It would be a lot better than mine."

If there was any error in refusing to admit the testimony of this witness, it was harmless.

■ Appellants assign a number of other errors closely related to the matters above discussed. We have considered them; but since we think the evidence justified the jury verdict, we do not find that they have any merit. The judgment is, therefore, affirmed. Costs are awarded to the respondent.

CALLISTER, C. J., and HENRIOD, CROCKETT and TUCKETT, JJ., concur.

---

2. 28 Utah 2d 347, 502 P.2d 560, decided October 27, 1972.