**Bruce C. JEPPSON and Jean W. Jeppson, his wife, Plaintiffs and Appellants,**

v.

**UNITED TELEVISION, INC., aka KTVX T.V. Channel 4, Defendant and Respondent.**

**No. 15318.**

Supreme Court of Utah.

May 26, 1978.

Gaylen S. Young, Jr., Salt Lake City, for plaintiffs and appellants.

Ray R. Christensen, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Plaintiffs appeal from an order of the District Court, Salt Lake County, granting defendant's motion to dismiss plaintiffs' complaint for failure to state a claim for which relief could be granted. All statutory references are to Utah Code Annotated, 1953.

Plaintiffs allege in their complaint that an agent and employee of defendant, as a part of the television program "Dialing for Dollars," telephoned plaintiffs at their residence on March 11, 1977, and had the following conversation with Plaintiff Jean W. Jeppson:

He: This is "Dialing for Dollars," do you have your T.V. set on?

She: No, I don't.

He: Oh, that is unfortunate, because you could have won $50.00.

She: Well now I'll tell you, I'd rather have peace in my home than all that garbage on television, even for $50.00.

Without the knowledge of Mrs. Jeppson, defendant's agent had announced the Jeppson name and telephone number on the air, and televised the conversation without advising Mrs. Jeppson, and without obtaining her consent. Immediately after this conversation, and continuing all of the remainder of the afternoon, plaintiffs allege they received calls from people all over the state of Utah, who referred to this conversation, and used rude, abusive, obscene and threatening language, all of which caused plaintiffs to be embarrassed, and humiliated, and to fear for their safety and well being.

Plaintiffs pray for relief on three separate theories: (1) invasion of common law right of privacy, (2) abuse of plaintiffs' personal identity in violation of the provisions of Section 76–9–405, and (3) intentional and malicious infliction of emotional and mental harm.

If the allegations contained in plaintiffs' complaint state a claim upon which relief may be granted on any one of these theories the Order of the District Court dismissing the complaint must be reversed.

Section 76–9–405 and 76–9–406, respectively, provide:

(1) A person is guilty of abuse of personal identity if, for the purpose of advertising any articles of merchandise for purposes of trade or for any other advertising purposes, he uses the name, picture, or portrait of any individual or uses the name or picture of any public institution of this state, the official title of any public officer of this state, or of any person who is living, without first having obtained the written consent of the person, or if the person be a minor, the written consent of his parent or guardian, or if the person is dead, without the written consent of his heirs or personal representatives.

Any person, or the heirs of any deceased person, who has been injured by a violation of this part may bring an action against the person who committed the violation. If in the action the court finds the defendant is violating or has violated any of the provisions of this part, it shall enjoin the defendant from a continuance thereof. It shall not be necessary that actual damages to the plaintiffs be alleged or proved, but if damages are alleged and proved, the plaintiff in the action shall be entitled to recover from the defendant the actual damages, if any, sustained in addition to injunctive relief. A finding that the defendant is in violation of this part shall entitle the plaintiff to reasonable attorney's fees. Exemplary damages may be awarded where the violation is found to be malicious.

In the case of *Donahue v. Warner Bros. Pictures Distributing Corp.*, 2 Utah 2d 256, 272 P.2d 177 (1954), this Court construed the predecessor statute to section 76–9–405 in considering whether the showing in the State of Utah of a motion picture based partially on the life of Jack Donahue gave rise to a claim for relief in favor of his heirs on the theory that said motion picture was shown "for purposes of trade".[1] In that case, this Court rejected the contention that the statute proscribed the publication of a name or picture in all cases when a profit motive is present, and held that the statute proscribes only such use "for advertising or exploitation of the name or picture or for the promotion of the sale of some collateral commodity . . . "

The statute was changed in 1973 and now clearly contains the limitation adopted by this Court in *Donahue.*

Plaintiffs allege in their complaint that defendant's program, "Dialing for Dollars" is presented solely for the purposes of advertising its television station, and increasing the viewers of its programs. They maintain that defendant's publication of their name and number without their knowledge and consent for the purposes of such advertising is within the proscription of the statute. We agree.

---

1. Section 76–4–8, repealed in 1973, provided in contrast to the present language: "Any person who uses for advertising purposes or for purposes of trade, or upon any postal card, the name, portrait or picture of any person . . . "

The District Court, in ruling on defendant's motion to dismiss, evidently found that plaintiffs had waived their rights of privacy, and had invited people to call their residence by having their name and number published in the telephone book. The violation of the statute, however, consists of the publication of the name on the air without plaintiffs' prior written consent. Plaintiffs complaint states a claim for which relief may be granted under the statute.

As this point is dispositive we do not discuss the remainder of plaintiffs' contentions.

Reversed and remanded for further proceedings not inconsistent with this opinion. Costs to plaintiffs.

MAUGHAN and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting).

The program "Dialing for Dollars" is a scheme used by the defendant to encourage the public to watch its programs. Occasionally during the day a number is selected at random from the phone book and if the person called is watching the show he will be paid the amount of money shown in the "kitty."

There was no use made of the name of Mrs. Jeppson " .   .   .   for the purpose of advertising any articles of merchandise for purposes of trade or for any other advertising purposes   .   .   .." [1] I think the case of *Donahue et al. v. Warner Bros. etc.*[2] is dispositive of the instant matter.

If Mrs. Jeppson received any phone calls they undoubtedly were prompted by her own response to the call made to her. Her phone number is listed in the phone book. If she is sensitive about receiving calls it would seem that she should have an unlisted phone in her home.

I would affirm the trial court and award costs to the respondent.

CROCKETT, Justice (dissenting).

In addition to the observations made in the dissent by Chief Justice Ellett, that the plaintiff's name was not actually used to advertise or in connection with any product or service, I think the following observations are also pertinent.

It should be realized that living in an organized society imposes some obligations of consideration for others in the pursuit of their interests, so long as that does not unduly infringe upon our own. With each of the benefits to be enjoyed there are some disadvantages to be endured. With the telephone it is common knowledge that everyone expects to get some undesired calls: wrong numbers, solicitations, or calls which are for other reasons unwanted, and which are usually quickly and courteously dealt with.

By way of comparison, and in deference to the necessity for reciprocal consideration for the actions and interests of others, the law recognizes that, in the absence of any warning to the contrary, there is an implied permission to enter one's property and knock at his door. A person may refuse to answer it, or he may revoke the permission by advising the knocker that his presence is not desired and requesting him to leave, with which request he must comply.

By analogy, in allowing her name and phone number to be listed in the public phone book, plaintiff should be deemed to give an implied permission to those who desire to call her number. She has the options of not having a phone, or of having an unlisted number, or she can refuse to answer, or she can reject any call (as she proved herself quite capable of doing). But up to the point of calling her number, it is my judgment that there has been no trespass against her, nor any impermissible invasion of her right of privacy.

The foregoing should fully justify the trial court's dismissal of the complaint. But if the filament of reason is strained to what I regard as beyond the breaking point,

**1.** U.C.A.1953, Sec. 76–9–405, enacted by Laws of Utah 1973, Ch. 196.

**2.** 2 Utah 2d 256, 272 P.2d 177 (1954).

and it be assumed that there was a technical violation of the plaintiff's privacy, there is yet another obstacle to her recovery, which further justifies the trial court's action.

In order to justify recovery two things must exist: first, a wrong committed by the defendant; second, and equally important, it must be shown to have been the cause of some damage to the plaintiff. Assume that there was some damage to the plaintiff (which this writer does not think reasonable minds would believe. Particularly so, because the plaintiff so ably demonstrated that she could summarily handle any unwanted calls.) Nevertheless, I can see no foundation upon which fair minded persons would conclude that any such damage was caused by the courteous inquiry and proffer of a favor by the defendant. On the contrary: the only reasonable conclusion is that if there was any such damage, it would have been caused solely by the plaintiff's own intemperate outburst at the courteously offered favor.

In regard to the supposition stated above, if the defendant's conduct constituted a mere technical violation of plaintiff's right, but caused no actual damage, the established rule previously approved by this Court, is that it will not reverse for the purpose of awarding nominal damages only.[1]

It is my opinion that the trial court wisely, properly and judiciously ruled that the court and jury should not be required to devote the time, trouble and attention necessary to deal with such a tenuous and meritless claim.

---

1. *Commonwealth National Bank v. Kennedy Co.*, 29 Utah 2d 83, 505 P.2d 298; 66 C.J.S. New Trial § 75, 240.