**GLOBE LEASING CORPORATION, a Utah Corporation, Al Weigelt and Gloria Morrison, Individuals, Plaintiffs and Respondents,**

v.

**BANK OF SALT LAKE, a Utah Corporation, and Norton Parker, an Individual, Defendants and Appellants.**

**No. 15337.**

Supreme Court of Utah.

Oct. 11, 1978.

Robert M. Anderson and Douglas Matsumori of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendants and appellants.

Robert M. McRae, Salt Lake City, for plaintiffs and respondents.

ELLETT, Chief Justice:

This is an action for damages allegedly caused by defendant's tortious interference with the business relations of Plaintiff Globe Leasing Corporation. The case was tried to the District Court of Salt Lake County, sitting without a jury, and from a judgment for plaintiff and a dismissal of defendant's counterclaims, defendant appeals. The court ruled against the individual plaintiffs, no cause of action, and dismissed all claims against the individual defendant. None of the individuals are parties to the appeal (hereafter, "plaintiff" and "defendant" refer only to the corporations unless otherwise indicated.)

In July, 1973, an agreement was entered into whereby plaintiff would "locate" prospective automobile lessees and make a credit check thereon. Plaintiff then provided defendant with information necessary for defendant's own credit check. When defendant approved the prospective lease,

plaintiff would order the automobile, execute the lease and a motor vehicle security agreement in favor of defendant, and also execute an assignment of the lease to defendant. The lease, assignment, and security agreement would then be sent to defendant at which time a credit advice (notification of monies advanced) in the lease amount would be issued to plaintiff's account with defendant. Each month defendant would debit plaintiff's account for the sums owing on each of the lease accounts.

Due to certain conduct on the part of the plaintiff, the defendant deemed itself insecure and on July 15, 1974, mailed letters to plaintiff's lessees informing them that plaintiff had assigned the leases to defendant. The letters also requested that all future lease payments be made directly to defendant. At this time plaintiff was not in default of its obligations.

On this same date of July 15, 1974, defendant assured plaintiff that it would honor three lease agreements being processed. After receiving defendant's credit advices on these leases, plaintiff issued checks to purchase the automobiles subject to the leases. The dealers, from whom these automobiles were purchased, brought these three checks to defendant for cashing and defendant refused payment. Some time later, after negotiations between the parties, a method of payment was agreed upon and plaintiff was able to purchase these three automobiles. On July 17, 1974, defendant notified plaintiff by telegram that it would no longer extend credit to plaintiff.

Plaintiff then brought suit enumerating six causes of action:

1) That as a result of defendant's wrongful dishonor of the three checks plaintiff suffered actual damages and damage to its reputation;

2) That defendant's notification to the lessees was a tortious interference with plaintiff's business;

3) That defendant's notification of termination was not timely or reasonable and put plaintiff out of business;

4) That defendant failed to disclose loan limitations and reliance on this omission put plaintiff out of business;

5) That defendant, by the above listed actions, slandered plaintiff's credit; and

6) That defendants defamed plaintiffs.

Defendant counterclaimed for the value of security deposits held by plaintiff, insurance on the leases, and other sums that plaintiff was holding pursuant to the lease agreements.

The District Court found that causes 1, 2, 3 and 5, ante, together constituted a tortious interference with plaintiff's business relations and deemed all four of these cases merged. It then awarded plaintiff damages in the sum of $50,000 for lost profit. Causes 4 and 6 of plaintiff's complaint and the counterclaim of the defendant were dismissed.

Insofar as plaintiff complains about the bank notifying the lessees to pay future payments to itself, it should be noted that the assignment of the leases contained the following provisions:

For Like Consideration and said BANK OF SALT LAKE is authorized and empowered to *collect all sums of money presently due or that at any time hereafter may become due and owing as rental under the provisions of said lease* and to receipt therefor, as fully and completely and for all purposes as the undersigned might, or could, have done had this assignment not been made and given.

The said BANK OF SALT LAKE is hereby authorized and empowered in its own name, or in the name of the undersigned assignor, to commence, prosecute and maintain any action or proceedings for the collection of any money, or moneys rightfully due it under and by virtue of this assignment.

■ It may be that the trial court could find that the bank technically breached its contract with the plaintiff; however, there is no basis for holding that the breach caused damages in the sum of $50,000 to the plaintiff.

In the first place, the plaintiff was capitalized for only $3,000. It tried to obtain financing from various banks and lending organizations but could induce only the defendant to furnish the funds for its operations. In the second place, it had not made any profits by July 15, 1975, the date it claims the breach of the contract occurred. In the third place, the bank did not give notice in writing, but that breach cannot cause any damage because the provision for a written notice did not require any time before it would become effective. It would not enhance the loss to the plaintiff if he was *told* no more financing would be made than it would if he received a written message to that effect.

The plaintiff was obligated to make monthly payments to the bank and had to make them from the collections it received from its lessees. The result was that plaintiff operated on a shoe string basis; and its damages would be nil merely because the defendant gave notice to some of the lessees that it had an assignment of their contracts and payments should thereafter be made directly to it. This, for the reason that the assignment to the bank provided that the bank had a right to make the collections.

The plaintiff seeks damages because it claims that as a result of the termination of the financing arrangement it could not obtain funds from other sources. If it had records to show that it would have made $50,000 profit had the bank continued to finance its leases, it seems somewhat strange that other lending institutions would be unwilling to get in on a good deal. It would seem, rather, that plaintiff had a losing business and that no financing could be arranged from other sources because of that fact.

The plaintiff began its operations in July, 1973, and claimed a breach of contract by the defendant one year later. If it had made no profit in its first and only year of operation, it does not seem that the evidence would justify a finding that it lost profits in the sum of $50,000.

■ Since only nominal damages can be shown, assuming a breach by the bank, the judgment is reversed and costs are awarded to the appellant. A case should not be remanded for a new trial where only nominal damages are shown to exist.[1]

CROCKETT and HALL, JJ., concur.

WILKINS, Justice (dissenting):

On appeal defendant asserts that the District Court's conclusions of law are contrary to law and unsupported by either the findings of fact or the evidence at trial. Defendant also claims that the damage award based on lost profits is improper.

I believe from a review of the record that the conclusions of law are amply supported by the findings of fact which are supported by the evidence.

Are the conclusions contrary to law? No, in my opinion. Recovery in tort for interference with business relations has received little exposure in Utah. The American Law Institute's Restatement of Torts, Second, Tentative Draft No. 23, 1977, Sections 766–774A provides a listing of the factors to be considered in an action for tortious interference with business relations. The key elements are an improper intentional interference with the performance of a contract between another and a third person [1] or the same interference with prospective contractual relationships.[2]

An intended consequence is defined by the Restatement and the courts [3] to include results that the actor is "substantially certain" will flow from his actions. The District Court, in order to find a tortious interference, implicitly found that defendant possessed the requisite intent. And the record supports this position.

1. *Commonwealth National Bank v. Kennedy Co.*, 29 Utah 2d 83, 505 P.2d 298 (1973); 66 C.J.S. New Trial Sec. 75b.

1. Restatement of Torts, Second, Tentative Draft No. 23, 1977, Section 766.

2. Id., Section 766 B.

3. Restatement of Torts, Second Section 8A and cases cited in the Reporter's Notes.

The District Court also found that defendant's acts interfered with plaintiff's business. This is supported in the record by the confusion and concern caused to plaintiff's lessees upon receiving notice of the lease assignments. The most significant impact of defendant's interference was its adverse effect on plaintiff's ability to procure future lines of financing and other automobiles after defendant's improper notice of termination and its dishonor of plaintiff's checks. Plaintiff's expert witness testified that these actions by defendant caused plaintiff to be forced out of business. And this testimony supports the District Court's finding.

Next, were defendant's actions improper and contrary to law? Defendant cites *First Security Bank of Utah, N. A. v. Wright,* Utah, 521 P.2d 563 (1974) for the proposition that a secured party may, at any time, notify a third party of his security interest. This right to notify, pointed out in *First Security,* is extended only to third parties. In the instant case the notice went to the account debtor, i. e., the plaintiff's lessees and under the Uniform Commercial Code was proper only if "so agreed and in any event on default." [4] The parties had not so agreed and plaintiff was not in default at the time of the notices. The notices also went beyond the mere notification of a security interest. Defendant informed the lessees that their lease had been assigned to defendant and also requested future payments be made directly to defendant.

Defendant is correct in contending that the financing agreement with plaintiff was terminable upon notice. Plaintiff claims, however, that the termination was improper in that notification came after actual termination by defendant. In light of the concatenation of events—the wrongful dishonor of checks, the notices to lessees, and the untimely notification—the District Court, could properly conclude, as it did, that defendant's actions were improper.

After concluding that defendant's acts constituted a tortious interference with plaintiff's business relations the District Court awarded damages measured by lost profits, which award defendant contends was improper.

This Court has long recognized that damages may be awarded for loss of profits. *Gould v. Mountain State Telephone & Telegraph Company,* Utah, 309 P.2d 802 (1957). The requirement for the award of lost profits is proof of loss that is not completely speculative nor uncertain. Plaintiff's expert witnesses provided such proof and the District Court's award was proper, in my opinion. I believe the District Court should be affirmed.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of WILKINS, J.

---

4. Utah Code, 1953, Sec. 70A–9–502(1), as amended.