**J.M. HUBER CORPORATION,**
**Plaintiff/Appellant/Cross-Appellee,**

v.

**LOWERY WELLHEADS, INC., George Lowery and Donald Walford,**
**Defendants/Appellees/Cross-Appellants.**

Nos. 83–2528, 83–2593.

United States Court of Appeals, Tenth Circuit.

Dec. 6, 1985.

Rehearing Denied Jan. 3, 1986.

Michael T. McLemore, of Arnold, White & Durkee, Austin, Tex. (Louis T. Pirkey, of Arnold, White & Durkee, Austin, Tex., William J. Wenzel, of Sneed, Lang, Adams, Hamilton, Downie & Barnett, Tulsa, Okl., Harold H. Flanders and Alec Horn, Borger, Tex., of counsel, with him on briefs), for plaintiff/appellant/cross-appellee.

William S. Dorman, Tulsa, Okl., for defendants/appellees/cross-appellants.

Before McKAY and LOGAN, Circuit Judges, and CROW, District Judge.*

McKAY, Circuit Judge.

This controversy arose when J.M. Huber Corporation, a manufacturer of oilfield

* Honorable Sam A. Crow, United States District Judge for the District of Kansas, sitting by desig-nation.

wellhead equipment, discovered that Lowery Wellheads, Inc., one of Huber's competitors, was labeling its wellhead products with alphanumeric symbols that corresponded to the symbols used by Huber on its wellhead products. Huber's alphanumeric symbols, which bear no direct relation to the size or other physical characteristics of Huber's wellheads, are either cast into, or stenciled on, the body of Huber's wellheads in letters and numbers that are ⅜ths to ⅝ths inches in height. All of Huber's wellheads are painted red, and the name "Huber Hercules" appears conspicuously on each wellhead, directly above the alphanumeric symbol.

Lowery's wellheads, although different from Huber's in size and other physical characteristics, are interchangeable with Huber's wellheads. In order to inform consumers that its wellheads are compatible with Huber's, Lowery labels its wellheads with the same alphanumeric symbols used by Huber except that Lowery adds the prefix "L" to each symbol. Thus, for example, a Lowery wellhead marked "L-A7S" is interchangeable with a Huber wellhead marked "A7S." The lettering used by Lowery is approximately the same size as the lettering used by Huber. The name "Lowery" appears conspicuously on each Lowery wellhead directly above the alphanumeric symbol. Lowery's wellheads are also painted red, but the paint used by Lowery is a different shade than the paint used by Huber.

Huber brought this action against Lowery, alleging common law trademark infringement, unfair competition, false designation of origin under 15 U.S.C. § 1125(a) (1982), and deceptive trade practices under the Oklahoma Deceptive Trade Practices Act, 78 Okla.Stat.Ann. §§ 51–55 (West 1976). Huber sought injunctive relief, an accounting, and attorney's fees. Lowery denied Huber's allegations and sought its costs and attorney's fees. The district court, sitting without a jury, ruled in favor of Lowery on the merits, awarding Lowery its costs but denying its claim for attorney's fees. Huber appeals, alleging various errors by the district court. Lowery cross-appeals, alleging that Huber instituted this action in bad faith and seeking its attorney's fees.

■ Huber's first assignment of error is that the district court's findings of fact are inconsistent as a matter of law. The district court found that "Huber uses in connection with its various wellhead products arbitrary type designations, to identify its wellhead products and distinguish them from the products of others." Record, vol. 1, at 382. The district court also found that "[p]laintiff has failed to establish that its type designations are distinctive." Record, vol. 1, at 385. Huber argues that, since "arbitrary" marks are deserving of the strongest trademark protection, it was error for the district court to conclude that Huber's alphanumeric symbols are not "distinctive" after finding that they are "arbitrary."

We believe that Huber misapprehends the district court's finding that Huber's marks are "arbitrary." Although the district court used the term "arbitrary," Huber's alphanumeric symbols are not "arbitrary" in the trademark sense. We interpret the district court's reference to "arbitrary" as meaning that Huber's alphanumeric symbols were, in the words of Huber's lead witness, "just picked out of the air." Record, vol. 2, at 36. Although Huber's alphanumeric symbols do not describe the physical characteristics of its various wellheads, it is clear that the symbols distinguish one Huber wellhead from another. Thus, the symbols are "descriptive" and are only entitled to trademark protection upon a showing that they have acquired a secondary meaning. *Educational Development Corp. v. Economy Co.*, 562 F.2d 26, 29 (10th Cir.1977). We find the case of *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980), to be instructive on this point. The Seventh Circuit stated therein:

> The 71B series numbers are not "arbitrary" marks in the trademark sense.

Although the numbers were chosen arbitrarily in the sense that they do not refer directly to a characteristic of the connectors, the progression of numbers was adopted, and is currently used, to describe the relative sizes of the connectors. Hence, they are merely descriptive, not arbitrary, terms.

*Id.* at 1023. There is ample support in the record for the district court's finding that Huber failed to establish that its alphanumeric symbols are "distinctive." As a result, we find no inconsistency in the district court's findings of fact.

■ Huber next argues that the trial court clearly erred in finding that Huber's alphanumeric symbols had not acquired a secondary meaning. To acquire secondary meaning, a descriptive mark must " 'have been used so long and so exclusively by one producer with reference to his' goods or articles 'that, in that trade and to that branch of the purchasing public, [the mark has] come to mean that the article' is 'his product.' " *Bardahl Oil Co. v. Atomic Oil Co. of Oklahoma,* 351 F.2d 148, 150 (10th Cir.1965), *cert. denied,* 382 U.S. 1010, 86 S.Ct. 619, 15 L.Ed.2d 526 (1966). Whether a mark has acquired a secondary meaning is a question of fact. *Educational Development Corp.* at 30.

■ On the issue of secondary meaning, Huber introduced evidence establishing that it had used some of its alphanumeric symbols for as long as thirty-four years and that it had sold $45 million in wellheads bearing the alphanumeric symbols in the past ten years. Huber also established that it had spent approximately $500,000 in that same period advertising its wellhead products and that approximately 12,000 catalogs are distributed annually to end users and supply stores. The only direct evidence introduced by Huber to establish secondary meaning was the testimony of a sales manager employed by an oilfield supply company who stated that approximately 35 percent of his customers order Huber wellheads by referring to Huber's alphanumeric symbols. Huber did not present any market survey data or other empirical evidence to establish that its alphanumeric symbols had acquired a secondary meaning. Nor did Huber introduce any testimony by end users establishing that the public associated Huber's alphanumeric symbols with Huber's wellhead products. Upon the evidence presented, both direct and circumstantial, we cannot say that the district court clearly erred in finding that Huber failed to prove that its alphanumeric symbols had acquired a secondary meaning.

Huber also contends that the district court erred in finding that Huber failed to establish a "likelihood of confusion." Because "likelihood of confusion" is an essential element of Huber's claim of common law unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (1982), we address this issue as it relates to both of those claims.

■ In this circuit, a determination of whether there is a "likelihood of confusion" requires consideration of several factors:

(a) the degree of similarity between the designation and the trade-mark or trade name in

(i) appearance;

(ii) pronunciation of the words used;

(iii) verbal translation of the pictures or designs involved;

(iv) suggestion;

(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

(d) the degree of care likely to be exercised by purchasers.

*Restatement of Torts* § 729 (1938); *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 940 (10th Cir.1983). This list is not exhaustive, and the facts of a particular case may require consideration of other variables. *Beer Nuts,* 711 F.2d at 940.

■ The district court properly considered these factors and found that Huber had failed to establish even a "possibility of confusion." Record, vol. 1, at 385. Because the district court did not expressly

refer to whether Huber established a "likelihood of confusion," Huber argues that the court did not apply the correct legal standard. It is clear, however, that if the district court found there was no *possibility* of confusion, it must have also concluded that there was no *likelihood* of confusion. Indeed, the district court expressly found that "all of the Plaintiff's witnesses established that they could readily tell the difference between the Huber wellheads and the Lowery wellheads." Record, vol. 1, at 385. It is clear from the record that the district court understood the proper legal standard, and its conclusion that Huber failed to establish a "likelihood of confusion" is not clearly erroneous.[*]

Huber also challenges the district court's finding that Huber does not have a protectable "trade dress" in the color red. The district court found that it is common for wellhead products to be painted red, and that the evidence did not support Huber's claim that the color red was a protectable "trade dress." This finding is not clearly erroneous.

Huber finally urges that the district court erred by allowing Lowery to introduce evidence that other manufacturers of wellheads use alphanumeric symbols that are similar, if not identical, to those used by competitors. Huber claims this evidence is inadmissible and that the district court erred in finding that Lowery's conduct is justified by the practices of the trade. It is no defense to an action for trademark infringement that third parties are also infringing the plaintiff's trademark. *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 78 (10th Cir.1958). However, the evidence of which Huber complains is relevant to the question whether there is a "likelihood of confusion." *Cf. Dixie Vortex Co. v. Lily-Tulip Cup Corp.*, 19 F.Supp. 511, 523 (E.D.N.Y.1937), *modified on other grounds*, 95 F.2d 461 (2d Cir.1938). Accordingly, the evidence was properly admitted.

The issues raised in this lawsuit were substantial, and we find no bad faith on the part of Huber in maintaining this action. Consequently, the district court did not abuse its discretion in denying Lowery's claim for attorney's fees.

The judgment of the district court is AFFIRMED.

---

[*] In this circuit, the "likelihood of confusion" issue is treated as a question of fact, subject to the clearly erroneous standard of review. *Hot Shot Quality Products, Inc. v. Sifers Chemicals, Inc.*, 452 F.2d 1080, 1081 (10th Cir.1971).

Several other circuit courts have adopted this approach. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1329 (8th Cir.1984); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir.1983) (must be supported by "substantial evidence"); *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assoc.*, 651 F.2d 311, 314 (5th Cir.1981); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377 (1st Cir.1980). However, there appears to be an evolving trend toward treating the fact finder's determination of the underlying factors as questions of fact, but treating the ultimate issue of "likelihood of confusion" as a question of law. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1243 (9th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004–05 (2d Cir.1983); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir.1983). In *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (White, J., dissenting), Justice White dissented from the denial of certiorari because of the conflict in the circuits on this question.