**NATURE'S WAY PRODUCTS, INC., and Christopher Enterprises, Inc., Plaintiffs,**

v.

**NATURE–PHARMA, INC., d/b/a Nature's Herbs; E. Paul Larsen; and Stephen L. Welling, Defendants.**

**NATURE–PHARMA, INC., Counterclaim Plaintiff,**

v.

**NATURE'S WAY PRODUCTS, INC. Kenneth Murdock and Loren Israelsen, Counterclaim Defendants.**

No. 88–C–355.

United States District Court, D. Utah, C.D.

April 10, 1990.

---

David O. Seeley, Salt Lake City, Utah, for plaintiffs.

Timothy C. Houpt, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly on February 6, 1990 for hearing on Defendants' Motion for Partial Dismissal and Motion for Partial Summary Judgment. Defendants were represented by Timothy C. Houpt and plaintiffs were represented by David O. Seeley. After briefing by the parties and extensive oral argument, the court took defendants' motions under advisement. Now, being fully advised, the court sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiff Nature's Way and Defendant Nature–Pharma (dba Nature's Herbs) are competitors in the business of selling natural herbs, vitamins, minerals and dietary supplements. Both parties claim to sell herbal formulas developed by Dr. John Christopher, a well-known author and lecturer on herbal medicine and who died in 1983.

Beginning in 1969, Dr. Christopher owned and operated a retail herb store in Orem, Utah under the trade name "The Herb Shop." Dr. Christopher employed Grace and Ernest Larsen to manage his store during his absences. Sometime in the early 1970s, Dr. Christopher sold his store to the Larsens, and they later named the store "Nature's Herbs." In 1973, Dr. Christopher formed a new corporation called "Christopher Enterprises, Inc.," in which he purported to have placed all of his assets of trademarks, formulas and trade names. Christopher Enterprises is one of the plaintiffs in this case. Plaintiff Nature's Way claims that in 1978 it purchased from Dr. Christopher the exclusive rights to use the endorsement and name of Dr. Christopher in connection with selling its herb products.

Plaintiffs' Third Amended Complaint against defendants seeks damages and injunctive relief for alleged violations of state and federal unfair competition laws as well as common law unfair competition and publicity rights. Defendants have moved to dismiss Counts I and VII of plaintiff's complaint and for summary judgment on paragraph 17(c) of plaintiff's Count III.[1]

In Count I, plaintiffs claim that defendants have engaged in unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by using marketing practices which likely cause ordinary consumers to be confused, mistaken or de-

1. Defendants also moved to dismiss Counts VI and VIII of plaintiffs' Third Amended Complaint, but those counts were voluntarily withdrawn by plaintiffs and were accordingly dismissed by the court at the time of argument.

ceived as to the origin of the product.[2] In paragraph 17(c) of Count III, plaintiffs contend that Nature's Herbs also has violated section 1125(a) by claiming that it "manufactures and distributes products utilizing Dr. Christopher's formulas and/or suggesting a relationship with Dr. Christopher." Finally, in Count VII of the Third Amended Complaint, plaintiffs allege that they have the exclusive rights to the publicity of Dr. Christopher's name, and that defendants' references to Dr. Christopher in marketing their products violates plaintiffs' exclusive rights.

## ANALYSIS

### I. UNFAIR COMPETITION BY "PATTERNING" (Count I)

Count I of plaintiffs' Third Amended Complaint is a general claim of unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988). Plaintiffs claim defendants "have engaged in a pattern of selecting and using trademarks, slogans, marketing claims, and trade dress in commerce substantially similar to those of Nature's Way," and that this "patterning" has led to a likelihood that ordinary consumers will be confused, mistaken or deceived as to the origin of the product in violation of section 1125(a).

Count I lists examples whereby defendant Nature's Herbs allegedly has sought to pattern its business after Nature's Way. Plaintiffs claim that these examples, when considered as a whole, constitute a violation of section 1125(a) because of the likelihood that customers will be confused about which products belong to which company.

Plaintiffs' allegations include irrelevant and coincidental claims, claims which are duplicative, non-actionable claims and a claim based upon use of a generic term. None of these considered separately would support an actionable claim, and this court rejects the notion that packaging them together as a "patterning" claim somehow creates a cognizable claim.

### A. Coincidental and Irrelevant Allegations

In Count I plaintiffs set forth allegations of certain benign or coincidental facts that the court considers to be irrelevant to an unfair competition claim under section 1125(a). For instance, plaintiffs note in paragraph 9(b) that both Nature's Way and Nature's Herbs "are located in relatively obscure Utah locations," i.e. the cities of Springville and Orem respectively. Also, plaintiffs state in paragraph 9(c) that both companies advertise the use of chaparral as a dietary supplement. A third irrelevant claim for section 1125(a) purposes is that Nature's Herbs announced its twentieth anniversary shortly after Nature's Way announced plans to celebrate its twentieth anniversary. Third Amended Complaint ¶ 9(e).

### B. Duplicative Allegations

Plaintiffs also set forth allegations in Count I which are duplicative of allegations set forth as the basis for other section 1125(a) claims in the complaint. Duplicative allegations in Count I include paragraphs 9(f) and 9(g), which both refer to similar trade dress adopted by defendant Nature's Herbs. Trade dress infringement is the specific grievance set forth in Count II of plaintiffs' complaint. In paragraph 9(i)(1) of Count I, plaintiff alleges similarity between the trademark "Caprinol" adopted

**2.** 15 U.S.C. § 1125(a) as amended effective November 16, 1989, reads as follows:

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

by defendant and the trademarks "Cantrol" and "Caprinex" adopted by plaintiffs. Defendant's Caprinol trademark is also the subject of the grievance set out in paragraph 17(a) of Count III, another section 1125(a) claim.

Another duplicative allegation in Count I is that Nature's Herbs uses the designation "Herbmaster's Originals" on its product while Nature's Way's allegedly has the exclusive right to use the name and endorsement of Dr. Christopher. Third Amended Complaint ¶ 9(d). This claim is subsumed by plaintiffs' claim in paragraph 17(c) of Count III, wherein plaintiffs allege that defendants have violated section 1125(a) by its claims that it "manufactures and distributes products utilizing Dr. Christopher's formulas and/or suggesting a relationship with Dr. Christopher."

### C. *Non–Actionable Allegations of Marketing Practices: Use of Suggestive Trademarks*

■ Another set of facts alleged by plaintiffs in support of Count I is that "Nature's Herbs has established a practice of selecting trademarks which are suggestive of the use or purpose of products with which they are used," and that "Nature's Herbs adopted the same practice, and specifically adopted a number of trademarks which are similar to those of Nature's Way." Third Amended Complaint ¶ 9(i). Plaintiffs do not claim that Nature's Herbs' trademarks in and of themselves are confusingly similar, or are false or misleading, such that Nature's Way's trademarks are being infringed. Rather, plaintiffs claim that Nature's Herbs has used the same marketing *practice* of using *suggestive trademarks*, and that this *practice* is another example of how Nature's Herbs allegedly has patterned its business after Nature's Way.

A "suggestive trademark" is one which requires imagination, thought and perception to reach a conclusion as to the nature of the goods. *Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 256 n. 7 (2nd Cir.1982). Suggestive trademarks constitute one of the four categories of trademarks, the others being "generic," "descriptive," and "fanciful." *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 939 (10th Cir.1983). The use of suggestive trademarks is a common business practice not unique to the herbal medicine market. It is the opinion of this court that section 43(a) of the Lanham Act cannot and should not be construed to protect the marketing practice of using suggestive trademarks. Section 43(a) is designed to protect the unfair use of specific trademarks, not the type of marketing practice utilized in adopting trademarks. *See Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir.1986) (no trademark protection for "the mere method and style of doing business"); *Häagen–Dazs, Inc. v. Frusen Glädjé, Ltd.*, 493 F.Supp. 73 (S.D.N.Y.1980) (Scandinavian marketing theme not protectable). Accordingly, paragraph 9(i) and its sub-paragraphs (1) through (10) of plaintiffs' Third Amended Complaint are dismissed because as a matter of law they do not provide a proper basis for a claim of unfair competition under section 43(a) of the Lanham Act.

### D. *Allegation of Use of Generic Term*

■ What remains in Count I after eliminating coincidental and duplicative claims, and non-actionable marketing practice claims, is plaintiffs' claim that Nature's Herbs' has recently begun to use the phrase "pure-herb" and that Nature's Way has used that same phrase in its own marketing for many years.[3] Third Amended Complaint ¶ 9(h). Nature's Way claims no trademark in the phrase "pure-herb," common law or otherwise. Similarly, plaintiffs do not allege that the term "pure-herb" is a descriptive phrase that has developed a secondary meaning identified only with plain-

---

**3.** The only other claim alleged in Count I not previously discussed in paragraph 9(a), which states that plaintiffs adopted the trademark "Nature's Way" in 1969, and that in 1973 defendants adopted the trademark "Nature's Herbs." There is no claim that these two marks are confusingly similar, nor could there be after considering them at face value. Furthermore, even if a claim of "patterning" is actionable under section 43(a) of the Lanham Act, one act does not a pattern make.

tiffs' products. A descriptive term or trademark is protectable only upon proof of a secondary meaning. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir.1985); *Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F.Supp. 1238, 1243 (S.D.N.Y.1987).

■ This court considers the phrase "pure-herb" to be a generic term. A generic term is one that refers to the genus of which the particular product is a species. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986). Inasmuch as generic terms are not entitled to protection under the Lanham Act, plaintiffs' final remaining allegation in Count I must also be dismissed. *815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643 (2nd Cir. 1988).

## II. UNFAIR COMPETITION BY REFERENCE IN ADVERTISING AND MARKETING TO CO–FOUNDER OF PRODUCT (Count III, Paragraph 17(c))

■ In paragraph 17(c) of Count III, plaintiffs claim that Nature's Herbs has violated 15 U.S.C. § 1125(a) by its "claims that it manufactures and distributes products utilizing Dr. Christopher's formulas and/or suggesting a relationship with Dr. Christopher" when plaintiffs are the alleged sole authorized representative of Dr. Christopher's formulas. Defendants seek summary judgment on this particular paragraph of Count III.

It is undisputed that defendants distribute products utilizing Dr. Christopher's formulas. It is also undisputed that Dr. Christopher is part of defendants' history as the founder of Nature's Herbs' predecessor-in-interest. Defendants' argument for summary judgment is that they should not be punished or prohibited from making true statements about the history of their company or about the source of their herbal formulas.

■ At issue is whether defendants' references to Dr. Christopher in their advertising and other dealings with the buying public "is likely to cause confusion" about the origin of the products. The essential purpose of section 43(a) of the Lanham Act is to provide a cause of action for any party injured by another party's commercial activities that are "likely to cause confusion" or deceive purchasers that the source of certain goods is a person or company other than their true source. 15 U.S.C. § 1125(a); *Marker Int'l v. deBruler*, 635 F.Supp. 986, 996 (D.Utah 1986), *aff'd*, 844 F.2d 763 (10th Cir.1988). Literal truth is not an absolute defense to a Lanham Act section 43(a) claim if the true statement has "a tendency to mislead, confuse or deceive." *Avis Rent A Car System, Inc. v. Hertz Corp.*, 782 F.2d 381, 386 (2d Cir. 1986).[4]

At this stage in the litigation, it cannot be concluded as a matter of law that there is no reasonable possibility that purchasers might be confused or misled by the defendants' references to Dr. Christopher in their commercial activities, particularly in advertising, even if such references are a true part of defendant Nature's Herbs' history. *See J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1471 (10th Cir.1985) ("likelihood of confusion" issue is a question of fact). Accordingly, defendants' Motion for Summary Judgment on paragraph 17(c) of plaintiffs' Count III is denied.

## III. RIGHT OF PUBLICITY OF NAME OF CO–FOUNDER OF PRODUCT (Count VII)

Count VII of plaintiffs' Third Amended Complaint is a pendant state law claim wherein plaintiffs allege that they have the exclusive rights to the publicity of Dr. Christopher's name, and that defendants' references to Dr. Christopher in marketing

---

**4.** The court in *Avis* further stated that when a plaintiff claims that a literally true statement has a tendency to mislead, confuse or deceive, then "evidence must be introduced to show what the person to whom the advertisement was addressed found to be the message." 782 F.2d at 386.

their products violates those exclusive rights.

Defendants argue that Count VII should be dismissed because a common law right of publicity does not exist under Utah law. Defendants present three arguments in support of their position: (a) a common law right of publicity claim cannot be maintained in light of the Utah Abuse of Personal Identity Act governing the same conduct; (b) even if publicity rights exist in addition to the Utah Act, those rights end at the death of the person being publicized; and (c) the right of publicity does not protect historical information, such as references by Nature's Herbs to Dr. Christopher as a founder of its business. These arguments will be discussed in the order presented.

### A. The Utah Abuse of Personal Identity Act

■ Utah's Abuse of Personal Identity Act is codified at sections 45–3–1 through –6 of the Utah Code. This statute provides a cause of action and a wide array of remedies in the event that an individual's personal identity is abused. The Act outlines the following as acts constituting abuse:

> The personal identity of an individual is abused if:
>
> (1) An advertisement is published in which the personal identity of that individual is used in a manner which expresses or implies that the individual approves, endorses, has endorsed, or will endorse the specific subject matter of the advertisement; and
>
> (2) Consent has not been obtained for such use from the individual, or if the individual is a minor, then consent of one of the minor's parents or consent of the minor's legally appointed guardian.

Utah Code Ann. § 45–3–3 (1988).

Defendants argue that plaintiffs' common law right of publicity claim is for the same type of conduct covered by the Utah Abuse of Personal Identity Act quoted above, and that for the Utah Act to have any meaning it must be construed to preclude a similar cause of action under the common law.[5] In Count VIII, plaintiffs had set forth a claim under the Utah Abuse of Personal Identity Act, but that claim was voluntarily withdrawn by plaintiffs in recognition that a cause of action under the Utah Act cannot be maintained after the death of the person whose name is being publicized.

Plaintiffs argue, on the other hand, that Count VII should not be dismissed because it is a common law right of publicity claim, and under what is argued to be the preferred common law view, the right of publicity action does not abate at the death of the publicized person. Furthermore, plaintiffs argue that the Utah Abuse of Personal Identity Act specifically permits other remedies that may be available in addition to remedies contained in the Act. The last section of the Utah Act, which is entitled "Other Remedies Unaffected," provides: "This act does not limit or supersede any causes of action otherwise available to the parties." Utah Code Ann. § 45–3–6 (1988).

The court considers the plain language of section 45–3–6 of the Utah Abuse of Personal Identity Act to dispose of defendants' argument that plaintiffs are precluded from seeking remedies outside of the Act, such as those that may be found in the common law. Plaintiffs, therefore, are not precluded from asserting a common law right of publicity claim. What must now be addressed is whether plaintiffs state a valid right of publicity cause of action under the common law.

### B. Survivability of Publicity Rights after the Death of Person Publicized

■ Utah courts have not addressed the issue of whether the common law right of

5. As support, defendants cite *Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2nd Cir.1990), which holds that a right of publicity claim is preempted by New York's right of privacy statute, N.Y. Civ.Rights Law §§ 50, 51 (Consol.1989). However, New York's statute does not contain a provision such as is found in Utah's statute—that remedies outside the statute are unaffected by the statute. Utah Code Ann. § 45–3–6 (1988).

publicity survives the death of the person being publicized. Case law from other jurisdictions indicates a split of authority on this issue. *See* Annotation, *Right to Publicize or Commercially Exploit Deceased Person's Name or Likeness as Inheritable,* 10 A.L.R.4th 1193 (1981 & Supp.1989). Defendants argue that there are good public policy reasons for determining that the alleged exclusive right of publicity in Dr. Christopher's name ended when he died.[6] Several of the cases cited by the defendants in support of their position involve the issue of whether the right of publicity is *inheritable* or *descendible.* Those cases present different considerations than the issue in the instant case, which is whether an *intervivos assignment* of the right of publicity is valid after the death of the transferor.

Plaintiffs respond by arguing that defendants fail to distinguish the right of publicity from the more general right of privacy. Plaintiffs concede that most privacy claims abate at the death of the subject person, but they contend that the right of publicity is a distinct subset of the right of privacy and that it protects fundamentally different interests and must be analyzed separately. *See Zacchini v. Scripps Howard Broadcasting Co.,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir.1983). In fact, the right of publicity is often classified as a property interest rather than part of the law of privacy. *See e.g., Price v. Hal Roach Studios, Inc.,* 400 F.Supp. 836, 843–46 (S.D.N.Y.1975) (also cites many other cases that recognize the right of publicity as a property right). Plaintiffs further argue that the modern trend and majority rule is that a common law right of publicity does survive the death of the subject person, provided that such person exploited his right of publicity while living.[7]

This court is persuaded that if faced with this issue, the Utah Supreme Court would recognize a common law right of publicity cause of action, and that it would follow what appears to be the majority and modern rule that the common law right of publicity survives the death of the subject person in cases where he or she transferred or otherwise exploited such rights while alive. The Restatement (Second) of Torts is consistent with this view. It provides that *"[e]xcept for the appropriation of one's name or likeness,* an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded." Restatement (Second) of Torts § 652I (1977) (emphasis added). The Utah court has recently followed the Restatement in a similar privacy/publicity case, *Cox v. Hatch,* 761 P.2d 556, 563–66 (Utah 1988), and this court's "Erie guess" is that the Utah court likely would also follow the Restatement's position on this issue.

The circumstances alleged in the instant case especially warrant the conclusion that plaintiffs' alleged exclusive rights to the publicity of Dr. Christopher's name did not abate at his death. Plaintiffs' claim that they purchased these rights from Dr. Christopher for valuable consideration five

---

**6.** Defendants cite the following cases in support of their argument that the right of publicity should end at the death of the subject: *Groucho Marx Productions, Inc. v. Day & Night Co.,* 689 F.2d 317 (2d Cir.1982) (under California law, right of publicity is not descendible) (*but see Acme Circus Operating Co. v. Kuperstock,* 711 F.2d 1538, 1542–44 (11th Cir.1983), which criticizes the *Groucho Marx Productions* case and held that the right of publicity *is* descendible if the right was exercised during the subject's lifetime); *Memphis Development, Inc. v. Factors Etc., Inc.,* 616 F.2d 956 (6th Cir.1980), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (applying Tennessee law); *Maritote v. Desilu Productions, Inc.,* 345 F.2d 418 (7th Cir.) *cert. denied,* 382 U.S. 883, 86 S.Ct. 176, 15 L.Ed.2d 124 (1965) (under Illinois law right of publicity not inheritable); *Reeves v. United Artists,* 572 F.Supp. 1231 (N.D.Ohio 1983) *aff'd,* 765 F.2d 79 (6th Cir.1985) (under Ohio law right of publicity is not descendible); *Meeropol v. Nizer,* 381 F.Supp. 29 (S.D.N.Y.1974), *aff'd,* 560 F.2d 1061 (2d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978) (privacy, not publicity, case applying New York statutory law).

**7.** *Acme Circus Operating Co. v. Kuperstock,* 711 F.2d 1538 (11th Cir.1983); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2nd Cir.1978); *Price v. Hal Roach Studios, Inc.,* 400 F.Supp. 836 (S.D.N.Y.1975); Restatement (Second) of Torts § 652I (1977).

years before he died and have exercised those rights freely until his death and thereafter. Plaintiffs should not be precluded from pursuing their claim of exclusive rights to this alleged bargain.

### C. *Historical Information Exception*

 Finally, defendants argue that the right of publicity does not protect dissemination of historical information, referring to the allegations that Nature's Herbs has stated in its advertizing that Dr. Christopher was a founder of their business and that their products are based on formulas that he developed. In support of their argument, defendants cite numerous cases dealing with entities who were sued unsuccessfully for publishing books, articles and records dealing with the life of a famous person. *E.g. Cher v. Forum Int'l, Ltd.,* 692 F.2d 634 (9th Cir.1982), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3089, 77 L.Ed.2d 1350 (1983); *Sidis v. F-R Publishing Corp.,* 113 F.2d 806 (2d Cir.), *cert. denied,* 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940); *Ann-Margret v. High Society Magazine, Inc.,* 498 F.Supp. 401 (S.D.N.Y.1980); *Hicks v. Casablanca Records,* 464 F.Supp. 426 (S.D.N.Y.1978).

The cases cited above by defendants in support of their historical exception argument are distinguishable from the instant case in the significant respect that the product being produced by the defendants in those cases was the historical information itself. In the instant case, the defendants are not marketing a book or record dealing with the life of Dr. John R. Christopher. Instead, they are using an historical fact to market a different product—namely, herbal medicines. Defendants' historical exception argument, if granted, would work to cause essentially every right of publicity case to fail on the basis that every truthful reference to a famous person in connection with an advertised product could be considered to be "historical information." Because "historical information" is being used in the instant case to market a product that is independent of the information itself, defendants' argument is without merit and is rejected. *Cf. Jeppson v. United Television, Inc.,* 580 P.2d 1087 (Utah 1978) and *Donahue v. Warner Bros. Pictures Distrib. Corp.,* 2 Utah 2d 256, 272 P.2d 177 (1954) (Utah right of privacy statute only applied to advertising or promoting sales of a "collateral commodity").

In sum, the court holds that Count VII of plaintiffs' Third Amended Complaint states a cause of action for which relief may be granted under the common law right of publicity.

Based on the foregoing, defendants' Motion to Dismiss is granted as to Count I of plaintiffs' Third Amended Complaint; defendants' Motion for Summary Judgment as to paragraph 17(c) of Count III is denied; and defendants' Motion to Dismiss Count VII is also denied.

IT IS SO ORDERED.